## HELVERING, Com'r of Internal Revenue, v. GREGORY.

### No. 324.

Circuit Court of Appeals, Second Circuit.

March 19, 1934.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen. (E. Barrett Prettyman, General Counsel, Bureau of Internal Revenue, and Allin H. Pierce, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellant.

Hugh Satterlee, of Washington, D. C., for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal (petition to review), by the Commissioner of Internal Revenue from

an order of the Board of Tax Appeals expunging a deficiency in income taxes for the year 1928. The facts were as follows: The taxpayer owned all the shares of the United Mortgage Corporation, among whose assets were some of the shares of another company, the Monitor Securities Corporation. In 1928 it became possible to sell the Monitor shares at a large profit, but if this had been done directly, the United Mortgage Corporation would have been obliged to pay a normal tax on the resulting gain, and the taxpayer, if she wished to touch her profit, must do so in the form of a dividend, on which a surtax would have been assessed against her personally. To reduce these taxes as much as possible, the following plan was conceived and put through: The taxpayer incorporated in Delaware a new company, organized ad hoc, and called the Averill Corporation, to which the United Mortgage Corporation transferred all its shares in the Monitor Securities Corporation, under an agreement by which the Averill Corporation issued all its shares to the taxpayer. Being so possessed of all the Averill shares, she wound up the Averill company three days later, receiving as a liquidating dividend the Monitor shares, which she thereupon sold. It is not disputed that all these steps were part of one purpose to reduce taxes, and that the Averill Corporation, which was in existence for only a few days, conducted no business and was intended to conduct none, except to act as conduit for the Monitor shares in the way we have described. The taxpayer's return for the year 1928 was made on the theory that the transfer of the Monitor shares to the Averill Corporation was a "reorganization" under section 112 (i) (1) (B) of the Revenue Act of 1928 (26 USCA § 2112 (i) (1) (B), being "a transfer by a corporation of * * * a part of its assets to another corporation" in such circumstances that immediately thereafter "the transferor or its stockholders or both are in control of the corporation to which the assets are transferred." Since the transfer was a reorganization, she claimed to come within section 112 (g) of that act, 26 USCA § 2112 (g), and that her "gain" should not be "recognized," because the Averill shares were "distributed, in pursuance of a plan of reorganization." The Monitor shares she asserted to have been received as a single liquidating dividend of the Averill Corporation, and that as such she was only taxable for them under section 115 (c), 26 USCA § 2115 (c) and upon their value less the cost properly allocated to the Averill shares. That cost she determined as that proportion of the original cost of her shares in the United Mortgage Corporation, which the Monitor shares bore to the whole assets of the United Mortgage Corporation. This difference she returned, and paid the tax calculated upon it. The Commissioner assessed a deficiency taxed upon the theory that the transfer of the Monitor shares to the Averill Corporation was not a true "reorganization" within section 112 (i) (1) (B), 26 USCA § 2112 (i) (1) (B), being intended only to avoid taxes. He treated as nullities that transfer, the transfer of the Averill shares to the taxpayer, and the winding up of the Averill Corporation ending in the receipt by her of the Monitor shares; and he ruled that the whole transaction was merely the declaration of a dividend by the United Mortgage Corporation consisting of the Monitor shares in specie, on which the taxpayer must pay a surtax calculated at their full value. The taxpayer appealed and the Board held that the Averill Corporation had been in fact organized and was indubitably a corporation, that the United Mortgage Corporation had with equal certainty transferred to it the Monitor shares, and that the taxpayer had got the Averill shares as part of the transaction. All these transactions being real, their purpose was irrelevant, and section 112 (i) (1) (B) was applicable, especially since it was part of a statute of such small mesh as the Revenue Act of 1928; the finer the reticulation, the less room for inference. The Board therefore expunged the deficiency, and the Commissioner appealed.

We agree with the Board and the taxpayer that a transaction, otherwise within an exception of the tax law, does not lose its immunity, because it is actuated by a desire to avoid, or, if one choose, to evade, taxation. Any one may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes. U. S. v. Isham, 17 Wall. 496, 506, 21 L. Ed. 728; Bullen v. Wisconsin, 240 U. S. 625, 630, 36 S. Ct. 473, 60 L. Ed. 830. Therefore, if what was done here, was what was intended by section 112 (i) (1) (B), it is of no consequence that it was all an elaborate scheme to get rid of income taxes, as it certainly was. Nevertheless, it does not follow that Congress meant to cover such a transaction, not even though the facts answer the dictionary definitions of each term used in the statutory definition. It is quite true, as the Board has very well said, that as the articulation of a statute increases, the room for interpretation must contract; but the meaning of a sentence may be

more than that of the separate words, as a melody is more than the notes, and no degree of particularity can ever obviate recourse to the setting in which all appear, and which all collectively create. The purpose of the section is plain enough; men engaged in enterprises—industrial, commercial, financial, or any other—might wish to consolidate, or divide, to add to, or subtract from, their holdings. Such transactions were not to be considered as "realizing" any profit, because the collective interests still remained in solution. But the underlying presupposition is plain that the readjustment shall be undertaken for reasons germane to the conduct of the venture in hand, not as an ephemeral incident, egregious to its prosecution. To dodge the shareholders' taxes is not one of the transactions contemplated as corporate "reorganizations."

This accords both with the history of the section, and with its interpretation by the courts, though the exact point has not hitherto arisen. It first appeared in the Act of 1924, § 203 (h) (1) (B), 26 USCA § 934 (h) (1) (B), and as the committee reports show (Senate Reports 398), was intended as supplementary to section 112 (g), 26 USCA § 2112 (g), then section 203 (c), 26 USCA § 934 (c); both in combination changed the law as laid down in U. S. v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180, and Rockefeller v. U. S., 257 U. S. 176, 42 S. Ct. 68, 66 L. Ed. 186. In the House Report (No. 179, 68th Congress 1st Sess.), and in the Senate Report (No. 398), the purpose was stated to be to exempt "from tax the gain from exchanges made in connection with a reorganization in order that ordinary business transactions will not be prevented." Cf. Lonsdale v. Com'r, 32 F.(2d) 537, 539 (C. C. A. 8); Prairie O. & G. Co. v. Motter, 66 F.(2d) 309, 311 (C. C. A. 10). Moreover, we regard Pinellas Ice & Cold Storage Co. v. Com'r, 287 U. S. 462, 53 S. Ct. 257, 77 L. Ed. 428, and our own decision in Cortland Specialty Co. v. Com'r, 60 F.(2d) 937, as pertinent, if not authoritative. In each the question was of the applicability of a precursor of section 112 (i) (1) (A) of 1928, 26 USCA § 2112 (i) (1) (A), to the sale of all the assets of one company to another, which gave in exchange, cash and short time notes. The taxpayer's argument was that this was a "merger or consolidation," because the buyer acquired "all the property of another corporation," the seller, that being one statutory definition of "merger or consolidation." That assumed, the

exemption was urged to fall within section 112 (g) as here. It might have been enough to hold that short time notes were not "securities," within section 112 (g); but both courts went further and declared that the transaction was not a "merger or consolidation," but a sale, though literally it fell within the words of section 112 (i) (1) (A). This they did, because its plain purpose was to cover only a situation in which after the transaction there continued some community of interest between the companies, other than holding such notes. The violence done the literal interpretation of the words is no less than what we do here. Moreover, the act itself gives evidence that, on occasion anyway, the purpose of a transaction should be the guide; thus in section 115 (g), 26 USCA § 2115 (g), the cancellation of shares is to be treated as a dividend—though otherwise it would not be such—if it is "essentially equivalent to the distribution of a taxable dividend"; again in section 112 (c) (2), 26 USCA § 2112 (c) (2), a distribution is in part taxable as a dividend, if it "has the effect of the distribution of a taxable dividend."

■ We do not indeed agree fully with the way in which the Commissioner treated the transaction; we cannot treat as inoperative the transfer of the Monitor shares by the United Mortgage Corporation, the issue by the Averill Corporation of its own shares to the taxpayer, and her acquisition of the Monitor shares by winding up that company. The Averill Corporation had a juristic personality, whatever the purpose of its organization; the transfer passed title to the Monitor shares and the taxpayer became a shareholder in the transferee. All these steps were real, and their only defect was that they were not what the statute means by a "reorganization," because the transactions were no part of the conduct of the business of either or both companies; so viewed they were a sham, though all the proceedings had their usual effect. But the result is the same whether the tax be calculated as the Commissioner calculated it, or upon the value of the Averill shares as a dividend, and the only question that can arise is whether the deficiency must be expunged, though right in result, if it was computed by a method, partly wrong. Although this is argued with some warmth, it is plain that the taxpayer may not avoid her just taxes because the reasoning of the assessing officials has not been entirely our own.

Order reversed; deficiency assessed.