**A.O. SMITH CORPORATION,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 82–1669.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1982.
Decided Oct. 25, 1982.

G. W. Haight, Milwaukee, Wis., for plaintiff-appellant.

John P. Griffin, Asst. Atty. Gen., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before WOOD and POSNER, Circuit Judges, and DUMBAULD, Senior District Judge.*

POSNER, Circuit Judge.

A. O. Smith Corporation appeals from an adverse judgment in a suit for refund of federal income taxes. Its appeal brings up to us the question whether the additional income tax due as a result of a recapture of investment tax credits pursuant to section 47 of the Internal Revenue Code must be paid on an estimated basis.

■ The Code allows a 7 percent investment tax credit to be taken in the year in which the investment is made. 26 U.S.C. §§ 38, 46(a)(1). But because of the way in which the credit is figured, the amount of the credit depends on the useful life of the investment. If it is eight years or more, then the full amount of the investment is the basis on which the 7 percent credit is figured, but if it is less than eight years the basis is reduced. See 26 U.S.C. § 46(c)(2). Therefore, if the taxpayer disposes of the asset in which he invested before the end of the useful life that was used in figuring the credit he took when he made the investment, it means he got a bigger credit than he was entitled to, and section 47 (by a complicated formula unnecessary to dwell on here) makes him add the excess credit to his taxable income for the year in which he disposed of the asset.

■ A. O. Smith took investment tax credits in years prior to 1974 and thereby reduced the amount of taxes it paid in those years. It had no taxable income in 1974, but because it sold certain property on which it had previously taken tax credits before the end of the property's useful life it was required to recapture some of its previous investment tax credits and add them to its 1974 tax liability. As a result, instead of owing zero income tax for 1974 it owed $148,000. It did not pay this tax on an estimated basis, i.e., currently, and the question is whether it should have done so. Section 6154(a) of the Code requires that

every corporation subject to taxation under section 11 of the Code pay estimated income tax. A. O. Smith contends that a tax that is due to recapture of investment tax credits need not be paid on an estimated basis, because it is not a section 11, but a section 47, tax.

We find this unpersuasive as either a textual or a policy argument. Section 47 provides that when recapture occurs "the tax under this chapter for such taxable year shall be increased." Section 11 is the corporate income tax, is in the same chapter as section 47, and is an obvious referent of that section, just as it is an obvious referent of section 38, which authorizes investment tax credits to be taken in the first place. When it deducted investment tax credits from its corporate income tax in years prior to 1974 A. O. Smith must have believed that the reference in section 38 to "the tax imposed by this chapter" included section 11— for it was from its section 11 tax that A. O. Smith deducted its investment tax credits.

In referring to section 11, section 6154(a) sweeps in all the other provisions that feed into section 11, including section 47. Suppose that midway through its taxable year a corporation lost a deduction that it had been counting on in estimating its income tax. The higher taxable income resulting from the loss of that deduction would result in a higher section 11 tax and more estimated tax due, even though section 6154(a) does not refer to the deductions that affect a corporation's section 11 tax. We are given no reason for a different treatment of credits. Investment tax credits would reduce the section 11 tax—they reduced it for A. O. Smith in earlier years—and with it the amount of estimated tax due. The loss of credits that were used to reduce section 11 taxes should therefore increase the section 11 tax and with it the amount of estimated tax due.

We cannot imagine a theory on which Congress could have desired asymmetrical treatment. Of course the event triggering a recapture of investment tax credits may be quite unexpected, but that is true of

---

* Of the Western District of Pennsylvania.

many events that affect liability for the section 11 tax. As it happens, the estimated-tax provisions of the corporate income tax are quite lenient—more so, oddly, than the provisions relating to individual income tax. For example, if (for a calendar-year corporate taxpayer) the event leading to an unexpected increase in tax liability occurs after December 1, no additional estimated tax need be paid at all. 26 U.S.C. § 6154(b).

Not only can we think of no feature of the recapture of investment tax credits that suggests it should be treated differently from other events that increase tax liability, and with it the amount of estimated taxes that must be paid; but A. O. Smith's argument, if accepted, would give firms an incentive to dispose prematurely of property on which investment tax credits had been taken in previous years—especially at the beginning of the taxable year, so that the taxpayer would have the use of the money he owed the IRS for an entire year, interest-free. It is in part to discourage the strategic timing of events that yield taxable income that income taxes are required to be paid on a current basis rather than in a lump at the end of the taxable year; and we cannot see why the evil of strategic timing is less when it relates to the premature disposition of property on which investment tax credits have been taken in previous years.

A. O. Smith's other arguments, which relate to its 1975 liability, do not merit discussion.

AFFIRMED.

DUMBAULD, Senior District Judge, dissenting.

The facts of the case at bar, and the novel legal issue involved, cannot be stated better than in the majority opinion:

A. O. Smith took investment tax credits in years prior to 1974 and thereby reduced the amount of taxes it paid in those years. It had no taxable income in 1974, but because it sold certain property on which it had previously taken tax credits before the end of the property's useful life, it was required to recapture some of its previous investment tax credits and add them to its 1974 tax liability. As a result, instead of owing zero income tax for 1974, it owed $148,000. It did not pay this tax on an estimated basis, i.e., currently, and the question is whether it should have done so. Section 6154(a) of the Code requires that every corporation subject to taxation under section 11 of the Code pay estimated income tax. A. O. Smith Corporation contends that a tax that is due to recapture of investment tax credits need not be paid on an estimated basis, because it is not a section 11, but a section 47, tax.

I differ with the majority only in finding appellant taxpayer's contention not only persuasive but convincing.

If I may begin with a general observation, as a recent reader of a useful volume by the author of the majority opinion,[1] I have the impression that he carries over into the analysis of this case the philosophy which permeates that treatise: that economic activity is a rational decision-making process, aimed at optimizing allocation of resources and minimizing imperfections of the market such as information costs and transaction costs. In tax law I accept a different philosophy: that rationality is not to be expected; that logic and justice are irrelevant; that tax law is "positive law" in the classical sense of that term; and that nothing but the expressed will of the legislator is controlling. The intent of Congress is conclusive. Tax law is a field where arbitrary fiat is king; the *sic volo sic jubeo* of the legislative body is final. To coin a jingle: "If Congress didn't say, the public doesn't pay." Or, as stated more elegantly in the frequently quoted words of the venerable Learned Hand:

"Any one may so arrange his affairs that his taxes shall be as low as possible;

1. Posner, *Economic Analysis of Law* (2d ed. 1977).

he is not bound to choose that pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes."[2]

Turning now to the specific statutory provisions involved in the case at bar, we note that the additional tax of $3,935 (together with a similar levy of $23,857 for 1975)[3] paid by taxpayer under protest and refund for which was sought by suit in the District Court, was imposed by the IRS pursuant to 26 U.S.C. 6655(a) which provides that:

In case of any underpayment of estimated tax by a corporation ... there shall be added to the tax under chapter 1 for the taxable year an amount determined at the rate of 6 percent per annum upon the amount of the underpayment ... for the period of the underpayment ...

The duty of the corporate taxpayer to pay estimated tax arises under 26 U.S.C. 6154(a) which provides:

Every corporation subject to taxation under section 11 ... shall make payments of estimated tax ... during its taxable year as provided in subsection (b) if its estimated tax for such taxable year can reasonably be expected to be $40 or more.

The pertinent portions of § 6154 thus require payment of estimated tax by a corporation only if it is "subject to taxation under section 11."

This presumably means subject to payment of tax under section 11; for in a larger sense any corporation subject to the jurisdiction of the federal government (whether or not it in fact does any business at all) could be considered as "subject" to the taxing authority of the United States under section 11.

The terms of Section 11 [26 U.S.C. § 11] prescribe that:

(a) A tax is hereby imposed for each taxable year on the taxable income of every corporation.

The tax is computed by applying an appropriate percentage rate to the corporation's taxable income.[4]

It is undisputed that appellant's 1974 tax computed under section 11 was zero.

However, the "recapture" of tax credits taken in earlier years resulted in substantial tax liability for 1974 ($148,244). That amount was timely paid by appellant with its 1974 return. The amount of this liability generated by premature sale of assets cannot be computed by means of any ma-

---

**2.** *Helvering v. Gregory,* 69 F.2d 809, 810 (C.C.A. 2, 1934). I never tire of quoting another familiar passage from Learned Hand:

In my own case the words of such an act as the Income Tax, for example, merely dance before my eyes in a meaningless procession: cross-reference to cross-reference, exception upon exception—couched in abstract terms that offer no handle to seize hold of—leave in my mind only a confused sense of some vitally important but successfully concealed, purport, which it is my duty to extract, but which is within my power, if at all, only after the most inordinate expenditure of time. I know that these monsters are the result of fabulous industry and ingenuity, plugging up this hole and casting out that net, against all possible evasion; yet at times I cannot help recalling a saying of William James about certain passages of Hegel: that they were no doubt written with a passion of rationality; but that one cannot help wondering whether to the reader they have significance save that the words are strung together with syntactical correctness. Much of the law is now as difficult to fathom, and more and more of it

is likely to be so; for there is little doubt that we are entering a period of increasingly detailed regulation, and it will be the duty of judges to thread the path—for path there is—through these fantastic labyrinths. Irving Dilliard (ed.), *The Spirit of Liberty: Papers and Addresses of Learned Hand* (2nd ed. 1953) 213.

In defense of the writers of tax laws, perhaps the case at bar, demonstrating the consequences of excessively laconic brevity, may illustrate the incentive to use inordinately complex verbosity.

**3.** I agree with the majority and the parties that the 1975 tax does not merit discussion. It follows automatically the outcome of the disputed 1974 tax.

**4.** It would seem that for the tax year 1974 in question here the rate would be 22 percent plus a surtax of 26 percent. In 1978 a five-step structure was substituted ranging from 17 percent on the first $25,000 to 46 percent on that portion of taxable income exceeding $100,000.

nipulation of the rates prescribed in section 11. Rather it arises under the terms of 26 U.S.C. § 47. That provision reads, in pertinent part:

If during any taxable year any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38, then the tax under this chapter for such taxable year shall be increased by an amount equal to the aggregate decrease in the credits allowed under section 38 for all prior taxable years which would have resulted solely from substituting, in determining qualified investment, for such useful life the period beginning with the time such property was placed in service by the taxpayer and ending with the time such property ceased to be section 38 property.

In other words the credit taken under section 38 in prior years was computed using a useful life longer than the period of actual use by the taxpayer before disposition of the property. Hence the credit allowable must be adjusted using the actual period of use as the useful life. This reduction in the allowable credit is not taken into account by recomputing the tax liability for the prior years where the excess credit was taken, but by adding the amount of the reduction to the tax under chapter 1 for the current taxable year. In other words, in the case at bar the reduction in allowable tax credit would be added to appellant's zero tax computed under section 11 and would constitute his tax liability for 1974.

The investment credits were taken by appellant in years prior to 1974 pursuant to 26 U.S.C. § 38 which provides:

There shall be allowed, as a credit against the tax imposed by this chapter, the amount determined under subpart B of this part.[5]

It will be noted that the credit applies against any tax imposed by chapter 1. That would include the income tax imposed on individuals by 26 U.S.C. § 1 as well as the corporate tax under section 11. Similarly the additional tax under 26 U.S.C. § 47 for premature disposition of section 38 property increases "the tax under this chapter" [1], and hence must be paid by individuals as well as corporations.

Tax credits have become popular in recent years. There are credits for increasing certain targeted jobs to reduce unemployment, credits for child care, residential energy conservation, political contributions, and the like. A tax credit applies against the tax itself as calculated by application of the applicable percentage rate against the taxable income; a deduction merely diminishes the amount of taxable income. Hence a tax credit should usually be more advantageous to the taxpayer. Since they apply to individual as well as corporate taxpayers, the credit provisions of section 38 and the disposition provisions of section 47 properly refer to "the tax imposed by this chapter" and "the tax under this chapter."

On the other hand, section 6154, imposing on corporations the duty to make payments of estimated tax, applies only to corporations "subject to taxation under section 11." It does not cover all taxation under chapter 1. (It does not apply to individuals at all. They are covered under separate provisions, 26 U.S.C. §§ 6015 and 6053.) Section 11, as we have seen, relates to the ordinary corporate tax, computed by applying a percentage rate to taxable income (taxable income having already been reduced by applicable deductions for depreciation, and other expenses). The section 38 investment credit, as we have seen, is subtracted from the normal section 11 tax. It is a credit against section 11 tax, not a deduction entering into the determination of the section 11 tax. Similarly the additional tax liability created under section 47 by premature sale is an

---

5. Subpart B includes 26 U.S.C. §§ 46–48. In general the amount of credit in 1974 was 7 percent of the qualified investment [26 U.S.C. 46(a)] which is determined by 100 percent of the basis of the property if the useful life is 8

*addition to* the section 11 tax,[6] *not a part of it.*

Hence it seems clear that the prepayment requirements in the case of corporations under section 6154 apply only to normal corporate tax computed under section 11, and not to the additional tax liability generated by reduction of a credit for premature disposition of property under section 47.

My answer to the question at issue in this case is based wholly upon analysis and interpretation of the pertinent statutory enactments; not upon legislative history; nor upon dictates of rational tax policy or administrative convenience in collecting the revenue. Counsel for appellant asserted at argument that exemption from prepayment of tax was an intended incidental side effect or "sweetener" which was part of the "deal" struck in Congress when the tax credit technique was adopted as a means of encouraging capital investment.[7] But no legislative history was cited in support of that contention. In fact no illuminating legislative history was brought to the attention of the court by counsel for either side; and the probability is that independent investigation would have been equally unfruitful.

I do not know why Congress wrote this legislation as it did.[8] But I am sure that if the result favored by the majority and the IRS had been the will of Congress it could easily have expressed its intention in unmistakably clear terms. In sections 38, 47, and 6655 where the intention was to include all

of chapter 1, the intention was clearly expressed. It would have been equally easy in section 6154 to use language embracing the entire chapter 1 if such was the desire of the legislators. Instead the requirement of prepayment of tax was limited to taxes imposed by section 11. It is my conviction that in the case at bar, as in all tax cases, the best *ratio decidendi* is *sic lex scripta est.*

---

years or more, two-thirds if 6 to 8 years and one-third if 4 to 6 years.

**6.** Liability under § 6655 for underpayment of estimated tax is itself an addition to normal tax (just as the liability for premature disposition under § 47 is). Should estimated tax also have been paid on the amount due for underpayment? Does not that lead to *regressus in infinitum?*

**7.** On the possibility of judicially determining the terms of a legislative deal, see Posner, "Economics, Politics, and the Reading of Statutes and the Constitution," 49 U. of Chicago L.R. (Spring, 1982) 263, 272–75.

**8.** One possibility is that it was thought that premature dispositions of property might often

result from unpredictable emergencies or need for cash flow (in that connection U.S. Steel recently sold its headquarters building in Pittsburgh to a California school teachers' pension trust in order to provide funds to acquire an oil company) and hence it might be unreasonable to expect a taxpayer to be able to anticipate in advance the incidence of such unexpected additions to tax liability. On the other hand as Judge Posner points out, a corporation might deliberately plan a disposition in the early months of the tax year (thus generating a known tax liability at that time) in order to have the use of money which under the tax prepayment system would have been enjoyed by the Government.