*In re* ESTATE OF MINNIE F. MURPHEY, Deceased (Rosemary Johnson *et al.*, Objectors-Appellees, v. Miriam Freeman, Ex'r of the Will of Minnie F. Murphey, Deceased, Respondent-Appellant).

Fourth District   No. 4—84—0552

Opinion filed February 15, 1985.

Rudasill & Rudasill, of Clinton (A. J. Rudasill, of counsel), for appellant.

Downing, Smith, Jorgensen & Uhl, of Decatur (James A. Uhl, of counsel), for appellees.

JUSTICE WEBBER delivered the opinion of the court:

Miriam Freeman, executor of the will of Minnie F. Murphey, filed her final account in the circuit court of De Witt County. Two of three residuary beneficiaries under the will filed objections to that account. Both the executor and the objectors filed motions for summary judgment. After submission of authorities and a hearing, the trial court allowed the objectors' motion and denied that of the executor, who appeals. We reverse.

There is no dispute over the facts or the law in this case. The core of the controversy is the application of certain provisions of the

Internal Revenue Code and parallel provisions in Illinois tax law concerning "family farm" or "special use" valuation of farmland.

In broad outline the Murphey will devised a 160-acre farm to the executor and her sister, Martha Lepp, who were nieces of the testator; the residue of the estate was bequeathed to three others, a niece, a nephew, and a grandniece. The will made no special provision for payment of taxes; therefore, each beneficiary became personally liable for the Illinois inheritance tax on the interest received, and the Federal estate tax became payable out of the residue.

It is not our purpose to explore the labyrinthine convolutions of either tax law. Suffice it to say that under section 2032A of the Internal Revenue Code (26 U.S.C. sec. 2032A (1981)) and under section 1 of "An Act to tax gifts, legacies, inheritances, transfers ***" (Ill. Rev. Stat. 1981, ch. 120, par. 375 *et seq.*), an executor has an option on the question of valuation of farmland. He may value it as a "family farm" or "special use," in which case there is a substantial reduction in tax. In the instant case under the Federal law the special use valuation would yield a value of $70,545; if the special use were not elected, fair market value would be the standard, and in the instant case would yield a value of $205,750. The difference in Federal tax in the instant case would be $32,753.56.

As is the case with nearly all tax concessions, the one with which we are concerned here is surrounded by conditions. The special use valuation is available only to qualified "family farms" which passed to "qualified heirs." The farmland and heirs involved here met these initial qualifications. If special use valuation is elected by the executor (and only the executor can make the election), the election must be accompanied by proof that the estate property is a qualified "family farm" that has been devised to qualified heirs. Furthermore, the election must be accompanied by an agreement signed by each qualified heir who has inherited an interest in the family farm. The agreement provides for a "recapture tax" payable by the qualified heirs should the farmland cease to remain in the family or should family members cease to materially participate in its operation during the next 10 years. The "recapture tax" would be equivalent in amount to the Federal estate tax saved by electing the special use valuation.

The executor filed a Federal estate tax return in which she indicated that she declined the section 2032A election. Therefore, for Federal tax purposes, fair market value was used. She took the opposite tack regarding the Illinois inheritance tax. In that return she did elect the special use valuation. She attached an affidavit establishing the qualified nature of the farm and of the heirs; she also attached an

agreement signed by herself and Martha Lepp whereby they agreed and consented to personal liability for the "recapture tax" in the event the farm ceased to qualify during the ensuing 10 years. The tax saving for each of them under Illinois law was approximately $7,000.

The executor filed her final account and two of the three residuary beneficiaries filed objections thereto. They claimed that the executor had breached her fiduciary duty to the estate and to the beneficiaries by not making the special use election; since the Federal tax was paid out of the residue, they asked that she be surcharged with the amount by which that tax was inflated for failure to make the election, that is, $32,753.56; they also asked that she be removed as executor and her executor's fee of $6,000 be disallowed.

On the date set for hearing on the objections, both sides filed motions for summary judgment. The executor's motion asked that the objections be overruled. The objectors' motion reiterated their objections set forth above.

The trial court allowed the objectors' motion and denied that of the executor. It found that the executor had a conflict of interest and had breached her fiduciary duty. It surcharged her $32,753.56, disallowed her fee, and removed her as executor. Upon a motion to reconsider, the court vacated that portion of its judgment which removed the executor, but otherwise confirmed it. The court also ordered the executor to file an amended final account, including the surcharge plus interest.

In its separate memoranda of opinion filed by the trial court upon the original hearing and upon the hearing on reconsideration, the court emphasized that it was basing its decision on what it perceived to be a conflict of interest in the executor. However, those memoranda fail to distinguish between an actual conflict and a potential conflict.

■ The executor concedes that a potential conflict of interest existed but argues that it never ripened into an actual conflict. We agree. Attached to the executor's motion for summary judgment is the uncontradicted affidavit of Martha Lepp, the other "qualified heir." In that instrument she stated that she had been informed by the attorney for the estate of the provisions of the Internal Revenue Code regarding special use and personal liability for the recapture tax and that she then informed the attorney that she would not sign the required agreement. Patently, without Lepp's agreement, the whole question of special use valuation became academic, and no alternative to fair market evaluation of the farm existed.

It is arguable that Lepp's position was inconsistent; that she

signed an agreement for purposes of Illinois inheritance tax but refused to do so for purposes of Federal estate tax. Such is undoubtedly the case, but it results from the difference in the nature of the two taxes. The Federal estate tax is an excise tax on the entire estate, payable from the residue unless some apportionment provision exists; the Illinois inheritance tax is a personal tax upon the interest received, payable by the recipient personally. Lepp could never reduce her Illinois tax without signing the agreement; however, she could reduce her potential liability for Federal tax by refusing to sign the agreement and thus inflating legally the amount required to be borne by the residue. It was nothing more than the practical operation of Judge Learned Hand's statement, "Any one may so arrange his affairs that his taxes shall be as low as possible." *Helvering v. Gregory* (2d Cir. 1934), 69 F.2d 809, 810.

Since no actual conflict ever arose, we disagree with the trial court's overbroad statement in its memoranda that when a conflict became apparent, the executor should have petitioned the court for instructions in order to relieve herself "of the onus of conflict." If an actual conflict materialized, such action would be appropriate, but to extend the dogma to every potential conflict is to require too much of testators and their fiduciaries. It is not unusual for an executor, generally a family member, also to be a beneficiary under a will. The very status, without more, carries with it great potential for conflict. If such potential is to be the basis for removal of an executor, the testator will be deprived of free choice in the selection of a fiduciary. If such potential is to be the basis for a petition for instructions every time it occurs, our already burdened court system will endure another addition to its load.

In the present case a genuine conflict of interest never arose because Lepp refused to agree to subject herself to possible recapture tax liability. Her refusal was well-informed, logical, and in her own best interest. As a result of Lepp's refusal, the executor was never faced with the decision of whether or not to elect special use valuation for Federal estate tax purposes, and a genuine conflict of interest situation never materialized. Petitioning the court for instructions, in this case, would have changed nothing. Since the executor was never faced with the decision of whether to elect special use valuation, an actual conflict of interest on her part never arose and there was no "onus of conflict" for the circuit court to relieve her of. The executor did not actually make a decision that adversely affected the interests of the residuary beneficiaries. She was not guilty or chargeable with any breach of fiduciary duty.

■ It remains to be decided what disposition we ought to make of this case. The executor in her brief asks us to reverse the order in favor of the objectors and direct the trial court to approve the payment of the Federal tax as shown in the final account on file and to approve the executor's fee; she also asks that additional fees be allowed to her and to her attorneys on account of this appeal. All questions of executors' fees are beyond the purview of this court and belong properly in the trial court. If any additional fee be allowed by that court, the final account would necessarily be recast. The proper order in this court therefore must be: the order of the circuit court of De Witt County allowing summary judgment in favor of the objectors is reversed and the cause is remanded to that court for further proceedings, if any, in accordance with the views expressed in this opinion.

Reversed and remanded.

MILLS and McCULLOUGH, JJ., concur.