WILLIAM V. AND JOYCE M. SCOGGINS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ROBERT W. AND CARRIE L. CHRISTENSEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Scoggins v. Commissioner
Docket Nos. 12540-89, 12541-89
United States Tax Court
T.C. Memo 1991-263; 1991 Tax Ct. Memo LEXIS 311; 61 T.C.M. (CCH) 2859; T.C.M. (RIA) 91263; June 10, 1991, Filed *311 Decisions will be entered under Rule 155. John F. Hopkins, for the petitioners. Steven J. Sibley, for the respondent. FAY, Judge. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to Federal income tax as follows: Docket No. 12540-89:
Additions to tax, sections
Year
Deficiency
6653(a)(1)[1]
6653(a)(2)
6653(a)(1)(A)
6653(a)(1)(B)
1985
$ 68,513.00
$ 3,426.00 * N/A
N/A
1986
106,935.00
N/A
N/A $ 5,347.00 *
Year
6661
1985
$ 17,128.00
1986
26,734.00
Docket No. 12541-89: Additions to tax, sections
Year
Deficiency
6653(a)(1)
6653(a)(2)
6653(a)(1)(A)
6653(a)(1)(B)
1985
$ 60,252.00
$ 3,013.00
* N/A
N/A
1986
116,453.00
N/A N/A $ 5,823.00 *
Year
6661
1985
$ 15,063.00
1986
29,113.00
*312 After concessions, [2] the issues for decision are: (1) Whether certain research and experimental expenditures are deductible by petitioners pursuant to section 174; (2) whether petitioners are liable for additions to tax for negligence pursuant to the applicable subsection of 6653(a); and (3) whether petitioners are liable for additions to tax for substantially understating their income tax pursuant to section 6661. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated by reference. At the time of filing their petitions in these cases, petitioners *313 William V. and Joyce M. Scoggins resided in Saratoga, California. Petitioners Robert W. and Carrie L. Christensen resided in Monte Sereno, California. For convenience and economy, these cases have been consolidated for trial, briefing, and opinion. In 1972, petitioners Robert W. Christensen (Christensen) and William V. Scoggins (Scoggins) formed Epitaxy, Inc. (Epitaxy). (All subsequent references to petitioners are to Christensen and Scoggins.) Epitaxy uses an epitaxial reactor (reactor) to apply layers of silicon on substrate silicon wafers according to customer specification. Epitaxy is a service business. In or about 1975, petitioners began to develop improvements to reactor technology. Approximately a year and a half later petitioners established a corporation, Epitaxy Equipment, Inc. (Equipment), to further improve reactor technology. Petitioners contributed the technology they had developed to Equipment for further development. Equipment successfully developed and improved reactors and sold them to Epitaxy as well as independent customers. In June of 1981, petitioners sold Equipment and the technology it owned to venture capitalists for approximately $ 3 million. *314 Pursuant to a covenant not to compete petitioners signed in connection with the Equipment sale, petitioners did not undertake any significant developments in reactor technology for three years. In August of 1984 the covenant not to compete had expired, and petitioners decided to continue to improve reactor technology. To this end petitioners caused two entities to be formed. One such entity was B&B Research and Development Partnership (B&B). Petitioners were the only partners in B&B. According to the partnership agreement B&B was to be in existence from August 6, 1984, to December 31, 2050. This period could be extended by unanimous consent, and the partnership could be dissolved simply by written notice from one partner to the other. The initial capital contributions were $ 24,000 each. Pursuant to the partnership agreement, neither partner was to be compensated in any way for performing services for the partnership. Nor was either partner required to devote full-time attention to the affairs of B&B. On the same day petitioners entered into the partnership agreement, B&B entered into a research and development agreement (R&D agreement) with Epitaxy Systems (Systems). Systems *315 was a corporation formed by petitioners in or about June of 1984. Systems was owned almost entirely by petitioners. Systems did work only for B&B and did not seek out research and development contracts with other entities. Systems leased an office, owned equipment, and had a phone. Systems also had employees. The R&D agreement required Systems to use its "best efforts" to conduct research and development service with regard to the Project [3] in exchange for monetary compensation, a nonexclusive license to use the Project, and an option to purchase the Project. Monetary compensation consisted of $ 500,000 to be paid as follows: $ 43,000 upon execution of the agreement; any additional amounts at B&B's option if Systems needed the money to continue Project development. The nonexclusive license was to "sell, and use the Project throughout the entire world." B&B agreed "any and all other licenses, that it may grant to third parties with respect to any of the Project shall be subject to the option rights of Systems" discussed below. As consideration for the nonexclusive license, Systems agreed to pay B&B a 20% royalty. Eighteen months after Systems was to complete the Project, *316 Systems "shall have an option for a period of one (1) year thereafter to acquire any and all rights of B&B Partnership to the Project" for an option price of $ 5 million. The option price was to be paid as follows: at least 20 percent or $ 1,000,000 cash and a promissory note for the balance. Christensen supervised Systems work while wearing his B&B "partnership hat" to protect his investment in B&B. B&B had no orders for equipment when it was formed. Petitioners made no effort to market B&B technology. B&B was formed for the purpose of funding this research and development effort. During the years at issue petitioners put $ 500,000 into B&B so it could fund the experimentation of Systems. The only assets B&B owned at conception was $ 48,000. It acquired no other assets except cash during *317 the years at issue. It owned no equipment, no desks, no phones, etc. It also had no employees. B&B licensed no other companies to use the technology during 1984-1986. The option price was set without the benefit of an appraisal or market analysis. Petitioners deducted the amounts paid by B&B to Systems as research expenses on their respective tax returns for the years at issue. It is these deductions the propriety of which is at issue. OPINION The first issue for decision is whether petitioners are entitled to deduct certain expenditures pursuant to section 174. Section 174(a) allows a deduction for research or experimental expenditures paid or incurred by a taxpayer in connection with the taxpayer's trade or business. Treasury Regulations allow the deduction whether such activities are performed by the taxpayer or carried out in his behalf. Sec. 1.174-2(a)(2), Income Tax Regs. The parties agree money was spent by B&B on research and experimentation. The only question is whether the expenditures were in connection with a trade or business. Petitioners have the burden of proof. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). The term "trade *318 or business" as used in section 174 has been interpreted by the Supreme Court as not requiring the entity to "currently be producing or selling any product in order to obtain a deduction for research expenses." Green v. Commissioner, 83 T.C. 667, 686 (1984), citing Snow v. Commissioner, 416 U.S. 500, 40 L. Ed. 2d 336, 94 S. Ct. 1876 (1974). However for section 174 to apply: the taxpayer must still be engaged in a trade or business at some time, and we must still determine, through an examination of the facts of each case, whether the taxpayer's activities in connection with a product are sufficiently substantial and regular to constitute a trade or business for purposes of such section.
Green v. Commissioner, supra at 686-687 (emphasis original). The relevant inquiry, as petitioners state on brief is: Whether the partnership had realistic prospects of engaging in a trade or business. [4]Diamond v. Commissioner, 92 T.C. 423, 439 (1989), affd. 930 F.2d 372 (4th Cir. 1991); Spellman v. Commissioner, 845 F.2d 148 (7th Cir. 1988), affg. T.C. Memo 1986-403; Harris v. Commissioner, T.C. Memo 1990-80; *319 Everett v. Commissioner, T.C. Memo 1990-65. Despite a blizzard of cites to Snow and an assertion respondent is slipping back to pre-Snow law, that is the very question respondent answers in the negative. We agree with respondent. B&B had no realistic prospects of engaging in a trade or business. Once we dig out of petitioners' Snow drifts, we find petitioners arguing the B&B/Systems arrangement used all the "magic words" used in previously decided post-Snowsection 174(a) cases. Petitioners should be aware the Court does not apply a "magic words" test. Levin v. Commissioner, 832 F.2d 403 (7th Cir. 1987), *320 affg. 87 T.C. 698 (1986). [5] Instead, the Court looks to all the facts and circumstances of a particular case. As respondent argues on brief, through the development of case law, certain relevant factors have been enumerated. Diamond v. Commissioner, supra, Spellman v. Commissioner, supra, Levin v. Commissioner, supra, Green v. Commissioner, supra, Harris v. Commissioner, supra, and Everett v. Commissioner, supra. They are: (1) The terms of the parties contractual arrangements; (2) lack of business activities of the partnership; and (3) the lack of capacity and incentive *321 of the partnership to use the product in its own trade or business. Review of these factors clearly shows B&B was not engaged in a trade or business for purposes of section 174(a). Pursuant to the R&D agreement B&B had given substantial rights in the technology to Systems in exchange for a 20 percent royalty fee. What it had left it gave Systems an option to buy. Thus, B&B had contractually precluded itself from engaging in any trade or business. Petitioners, however, point to the high option price as one indication B&B was in a trade or business. Because, petitioners argue, the option price was high, they were in a trade or business. Our analysis of the facts and relevant case law leads us to a different conclusion. See Coleman v. Commissioner, T.C. Memo 1990-357 ($ 9,000,000 option). If Systems exercised its option, petitioners would be unable to exploit the reactor. Since B&B had no other assets, it would have nothing left to do and could not engage in a trade or business. Systems would only choose not to exercise its option if (1) the projected income from the reactor was lower than $ 5 million; and (2) B&B granted no other licenses which cut into *322 Systems' profit from the nonexclusive licenses. If Systems found the Project to be economically unfeasible, B&B would surely find it the same. B&B would have to go to the extra step of purchasing the equipment and prototypes from Systems, leasing and furnishing office space, and hiring employees. The only partnership activities proven by petitioners were ministerial. The only function of B&B during the years at issue was the maintenance of bank accounts, payment of research and development fees, payment of legal and accounting fees, and filing of tax returns. B&B was entitled to periodic status reports from Systems to enable B&B to monitor System's progress towards development of the Project. The reports were neither supplied nor requested. B&B made no effort to solicit business from potential customers. Christensen supervised Systems' work in order to "protect his investment." The management of investments by itself is not a trade or business no matter how much time is required to perform managerial functions or how much money is invested. Green v. Commissioner, supra at 688. B&B carried on no business activity during the years at issue. It *323 is obvious B&B did not plan on becoming involved in the business any time in the foreseeable future. Systems was required to use its "best efforts" to market the Project. B&B was not required to do anything except collect royalties. B&B had no equipment. Systems was to keep the prototype while B&B was to get proprietary rights to the technology. If Systems did not find the conditions right to exploit the project, B&B would surely have no incentive to do so. Again, B&B would have the extra costs of purchasing the prototype, furnishing an office, setting up accounting systems, etc. We find there is no realistic prospect the technology will be exploited in any trade or business carried on by anyone other than Systems. Diamond v. Commissioner, supra at 439. Accordingly, we hold for respondent on this issue. The next issue is whether petitioners are liable for additions to tax pursuant to section 6653(a)(1). [6]Section 6653(a)(1) imposes an addition to tax if any part of the underpayment is due to negligence or intentional disregard of rules and regulations. Section 6653(a)(2) imposes a further addition of an amount equal to 50% of the interest due on *324 the portion of the underpayment attributable to negligence. Negligence is defined as the failure to exercise the due care a reasonable and ordinary prudent person would under the circumstances. Neely v. Commissioner, 85 T.C. 934 (1985). Petitioners in the current cases did exercise due care. The documents were prepared by an attorney with whom they had prior dealings and therefore confidence. Petitioners also enlisted the services of a CPA to file their return. A review of the documents in these cases makes it clear petitioners carefully tried to fit within the parameters of the law to arrange their affairs to pay as little taxes as legally possible. "Any one may so arrange his affairs that his taxes shall be as *325 low as possible; he is not bound to choose that pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes." Helvering v. Gregory, 69 F.2d 809, 810 (2d Cir. 1934) (citations omitted). Simply finding they stepped beyond the allowable limits, in a complicated area of the law, is not enough to find negligence. Everett v. Commissioner, supra.We hold petitioners are not liable for the addition to tax pursuant to section 6653(a)(1). Additionally, because none of the understatement is attributable to negligence, section 6653(a)(2) does not apply. The last issue is whether section 6661 applies. Section 6661 provides for an addition to tax "If there is a substantial understatement of income tax for any taxable year." The test whether there is a substantial understatement is mechanical and must await the completion of Rule 155 computations. Section 6661 does not apply to any portion of the understatement which is attributable to "the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment." Sec. 6661(b)(2)(B)(i). Section 1.6661-3(a)(2), Income Tax Regs., *326 states: The * * * standard is less stringent than a "more likely than not" standard * * * but stricter than a reasonable basis standard (the standard which, in general, will prevent imposition of the penalty under section 6653(a) * * *). Thus, a position with respect to the tax treatment of an item that is arguable but fairly unlikely to prevail in court would satisfy a reasonable basis standard, but not the substantial authority standard.
We find petitioners' position in the instant cases is "arguable but fairly unlikely to prevail in court." Therefore, we find section 6661 applies pending the outcome of the Rule 155 computations. Decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50% of the interest due on the deficiency.↩
*. 50% of the interest due on the deficiency.↩
2. Among other things, the parties agree the expenditures would qualify as research and development expenses if they were incurred in connection with a trade or business.↩
3. The Project was, according to the R&D agreement, to be described in an exhibit attached to the R&D agreement. No exhibit was attached. We find the Project was development of certain concepts relating to Expitaxial Reactors.↩
4. It is important to note we look at whether the partnership↩ had realistic prospects of engaging in a trade or business. Petitioners argue repeatedly because they were the creative force behind the Project, B&B must have had the prospect of engaging in a trade or business. We find petitioners could have more easily enabled Systems to engage in a trade or business, and that is exactly what they have done.
5. The Seventh Circuit describes the magic word defense as follows: "if the partnership's documents contain the right language, then all is well. The Tax Court looked past the documents to the expectation of the parties at the time." Levin v. Commissioner, supra↩ at 406.
6. Sectiona 6653(a)(1) in 1985 and 6653(a)(1)(A) in 1986, for our purposes, impose an addition to tax for the similar behavior. Sections 6653(a)(2) and 6653(a)(1)(B)↩ also impose an addition to tax for the similar conduct. In this discussion, we treat them as if they are the same.