TORPY, J.,
concurring specially.
The victim testified that Appellant removed his clothes, her clothes and then held her by the shoulders while he pushed her up and down, repeatedly causing his penis to come in contact with her “vagina,” until he apparently ejaculated (the young victim testified that she felt something slimy on her vagina). Although she felt his penis hit her “vagina” repeatedly, she admitted that it did not go “inside her vagina.”
Although a dictionary might be a reliable resource to determine the meaning of a word used in a statute, just like any other tool of statutory construction, its definition is by no means conclusive. Miele v. Prudential-Bache Sec., Inc., 656 So.2d 470, 472 (Fla.1995). Dictionaries represent the opinion of the author(s) of the meaning of a word without regard to the particular context in which the word is used. Context is as important as the definitions of the individual words in determining what is meant by a statute. As Judge Learned Hand said, “the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes.” Helvering v. Gregory, 69 F.2d 809, 810-11 (2d Cir.1934). Some dictionaries have the objective to record and report the way words are actually used in our society; others tend to prescribe proper usage, thereby perpetuating traditional definitions, even in the face of wide-spread changes in use.[2] As a general proposition, dictionaries are hardly fixated on the pulse of our rapidly evolving language in our multi-cultural society. These are some of the reasons why scholars caution against overreliance on dictionaries in statutory interpretation.[3]
The language used in a statute is an important key to what the legislature intended because we presume that the legislature knew what the word meant and intended to employ that meaning. When a particular word is susceptible to more than one meaning, however, we must look at context and other indicia of legislative intent, such as the history of the statutory scheme and our own experiences, logic and common sense. State v. Burris, 875 So.2d 408, 410 (Fla.2004); State v. Hodges, 614 So.2d 653, 654 (Fla. 5th DCA 1993). Our ultimate responsibility in construing any statute is to effectuate the intent of the legislature. B.C. v. Fla. Dep’t of Children & Families, 887 So.2d 1046, 1051 (Fla.2004) (purpose in construing statutory provision is to give effect to “polestar” of legislative intent). To do so, we must give effect to all of the language of the statute and should not adopt a construction that thwarts the clear intent of the legislature or leads to an absurd or unreasonable result. Burris, 875 So.2d at 410. It is not our function to write a better statute, only to give a common sense construction to the one we are asked to construe.
There is no question that the word “vagina” is susceptible to two different meanings. One is a technical, medical definition that we might expect to see used in the context of a medical journal where the technical distinction between the vagina and other parts of the female sex organ might be important. The other definition is the broader everyday definition used by most people to describe the female sex organ as a whole. Our sister court reject *836 ed the broader definition by concluding: “[w]e have found no such expanded definition even in common dictionaries.” Richards v. State, 738 So.2d 415, 419 (Fla. 2d DCA 1999). The fallacy in this conclusion is that our sister court restricted its search for the definition to only one source — the dictionary, even to the exclusion of sworn, expert testimony to the contrary. According to the medical doctor who testified in Richards, the word “vagina” is commonly used to refer to both the external and internal parts of the female sex organ. The doctor in State v. Pate, 656 So.2d 1323 (Fla. 5th DCA 1995), gave a similar opinion. Although an expert opinion is not binding on a court, it may be considered and is no less credible than a dictionary definition, especially where our own experiences confirm the validity of the alternative definition. See Charles W. Ehrhardt, Florida Practice § 703.1, n. 16 (2010 ed.) (experts’ opinions, although not binding on court, may be considered in determining meaning of word); see also Lindsey v. Bill Arflin Bonding Agency, Inc., 645 So.2d 565, 568 (Fla. 1st DCA 1994) (“expert testimony may be relevant and helpful to the court in understanding the meaning of statutory language involving words of art or scientific or technical terms.... ”). We know from our own experiences that, in everyday jargon, the word “vagina,” is used as a synonym for the female sex organ. This is what children are taught when they learn basic anatomy. This is the word most adults use to identify the female sex organ. We need not isolate ourselves from the rest of the world or ignore our experiences when we determine the meaning of a commonly used word.
Given these two potential definitions, we must resort to other statutory construction tools to determine what the legislature intended when it used the word “vagina” in the context of this particular statute. The statute does not pertain to medical procedures or other technical subjects so there is no reason to believe that the legislature intended to employ a technical definition. We know from the historical context of the rape and sexual battery statutes, that by adding the phrase “in union with,” the legislature intended to expand the common law crime of rape to include direct physical contact, without the need for penetration. Recognizing its duty to give effect to the “in union with” language of the statute, the Richards court concluded that the state may still prove in-union-with-the-vagina battery by proving penile contact with the vagina, as defined in the technical sense. Of necessity, this would require the state to prove penetration of the external portion of the female sex organ to the point of contact with the vagina. I can hardly conclude that such an inconsequential effect is intended by this statutory language. It’s just not logical to me that the legislature would go through this semantic exercise just to get back to the point of beginning — a prohibition against penetration of the female sex organ by the male sex organ.
It is also illogical to me that the legislature consciously intended to expand the traditional crime of rape by defining sexual battery to include oral union with a clitoris or union of the penis with the mouth of the victim, but at the same time narrow the traditional definition by not including penile union with a clitoris. The statutory evolution of this crime since its common law inception evinces a legislative intent to broaden traditional concepts of rape and sexual battery, not to do the contrary.
The rule of lenity does not compel a contrary conclusion. Not all ambiguity results in a defense victory. See Smith v. United States, 508 U.S. 223, 239-40, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (“The mere possibility of ... narrower construction ... does not by itself make the rule of *837 lenity applicable. Instead, that ... rule is reserved for cases where, ‘[ajfter “seizing] every thing from which aid can be derived,” ’ the Court is ‘left with an ambiguous statute.’” (citations omitted)). Few statutes can endure the scrutiny of trained wordsmiths. Here, the ostensible ambiguity involves the fact that a single word is susceptible to more than one meaning. This is the case with many words in our language.[4] Usually, when dual meanings are possible, context eliminates the potential ambiguity, as is the case here. See § 775.021(1), Fla. Stat. (2010) (rule of lenity applies when “language” is susceptible to differing constructions). The rule of lenity is not a legal loophole for those who successfully strain to identify any ambiguity. It is predicated on the notion that criminal defendants should receive fair notice of what conduct is prohibited by law. The prohibition against unlawful “union” with the “vagina” contained in this statute is plain enough to give fair notice of what is criminal. Although legal scholars might be more satisfied with a statute that prohibits “union with the labia majora, mons pubis, labia minora, clitoris, bulb of vestibule, vulval vestibule or vagina,” it is doubtful that the use of these technical terms would afford any additional notice to the vast majority of people. I am satisfied that Appellant and other would-be offenders can read this statute and know what is proscribed. Accord State v. Morse, 126 Wis.2d 1, 374 N.W.2d 388 (1985) (term “vagina” to be given broader definition than technical medical definition to effectuate legislative intent).

. Rickie Sonpal, Old Dictionaries and New Textualists, 71 Fordham L. Rev. 2177, 2180 (2003).

. See, e.g., Ellen P. Aprill, The Law of the Word: Dictionary Shopping in the Supreme Court, 30 Ariz. St. L.J. 275 (Summer 1998); Clark D. Cunningham, Judith N. Levi, Georgia M. Green & Jeffrey P. Kaplan, Plain Meaning and Hard Cases, 103 Yale L.J. 1561 (1994) (book review).

. This point is illustrated with anatomical words alone: To describe a person by saying that he or she has no heart, a big mouth, a big head, or a lead foot seldom is intended to pertain to an anatomical characteristic.