656 So.2d 470 (1995)
Dom MIELE, et al., Plaintiffs-Appellants,
v.
PRUDENTIAL-BACHE SECURITIES, INC., et al., Defendants-Appellees.
No. 81467.
Supreme Court of Florida.
June 8, 1995.
Thomas R. Grady of Grady & Associates, L.P.A., Naples, for plaintiffs-appellants.
John D. Boykin of Boose, Casey, Ciklin, Lubitz, Martens, McBane & O'Connell, West Palm Beach, for defendants-appellees.
Bridget L. Ryan, Tallahassee, amicus curiae for Dept. of Banking and Finance.
PER CURIAM.
This cause is before the Court on the following certified question of law from the United States Court of Appeals for the Eleventh Circuit in Miele v. Prudential Bache Securities, 986 F.2d 459 (11th Cir.1993):
Does Florida Statute § 768.73 apply to arbitration awards?
Id. at 460. We have jurisdiction pursuant to article V, section 3(b)(6) of the Florida Constitution, and answer the question in the negative.
In 1985 Dom and Shirley Miele (the Mieles) established an investment account with Prudential-Bache Securities (Prudential). The Mieles' contract with Prudential provided for arbitration of any controversy relating to the account. The Mieles incurred substantial losses to their account over a period of four years, but Prudential refused *471 to reimburse them for the losses. Pursuant to the contract, the Mieles filed a demand to arbitrate the dispute before the American Arbitration Association (AAA).
In June 1991, the AAA found for the Mieles and entered an award consisting of both compensatory and punitive damages. The Mieles filed a petition in the United States District Court for the Middle District of Florida, seeking to have the award confirmed. Prudential forwarded two checks to the Mieles, including one made out to the State of Florida General Revenue Fund for 60% of the punitive damage award pursuant to section 768.73(2), Florida Statutes (1991),[1] which provides for the splitting of punitive damages between the State of Florida and the claimants in civil cases.[2] Prudential responded to the Mieles' petition by representing to the district court that the award had been fully paid.
The Mieles again moved for an order confirming the award, attacking the amount tendered by Prudential on the grounds that Prudential made an erroneous calculation of the total amount of the award. The Mieles also argued that section 768.73(2) does not apply to arbitration awards, but is unconstitutional if it does. The federal district court entered an order confirming the award, including punitive damages totalling $266,654.79. The district court also held that section 768.73 applies to arbitration awards. The Mieles appealed to the Eleventh Circuit Court of Appeals, which reserved consideration of any of the issues until this Court determines whether section 768.73 applies to arbitration awards.
Both the Mieles and Prudential urge this Court to look to the plain language of the statute in determining whether it applies to arbitration awards. However, the parties find very different meaning in that "plain language." The Mieles argue that the term "civil action" in subsection (2) indicates that the legislature never intended for the statute to apply to arbitration proceedings. According to the Mieles, a "civil action" is a proceeding in court before a judicial officer, while arbitration is an arrangement to be used instead of carrying a dispute to court. The Mieles also note that related subsections of the statute use language that is foreign to an arbitration proceeding.
In contrast, Prudential contends that "civil action" is a broad term encompassing all actions except criminal actions. Prudential also notes that the legislature passed the statute to address the increasing frequency and amount of punitive damage awards, and thus the statute should apply to arbitration awards in the same way as other actions. Prudential also asserts that any action commenced by pleading or petition constitutes an action of a civil nature as provided by Florida Rule of Civil Procedure 1.050.[3] Thus, once an arbitration award is enforced by the utilization of the judicial system through a petition or motion to confirm, as the Mieles did in this case, the statutory mandate to split a punitive damage award becomes applicable.
"It is a fundamental rule of statutory construction that legislative intent is the polestar by which the court must be guided." State v. Webb, 398 So.2d 820, 824 (Fla. 1981). In turn, legislative intent must be determined primarily from the language of the statute. City of Tampa v. Thatcher Glass Corp., 445 So.2d 578, 579 (Fla. 1984).
*472 Prudential argues that the definition of "civil action" in Black's Law Dictionary includes all types of actions other than criminal proceedings. While dictionaries are beneficial in determining the meaning of individual words, we should not "make a fortress out of the dictionary". Cabell v. Markham, 148 F.2d 737, 739 (2d Cir.), aff'd, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945). Words often take on a different meaning from their individual definitions when viewed in context with the other words in the text. As Judge Learned Hand once observed, "the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes." Helvering v. Gregory, 69 F.2d 809, 810-11 (2d Cir.1934), aff'd 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935). Moreover, the context in which a term is used may be referred to in ascertaining the meaning of that term. City of Tampa, 445 So.2d at 579-80. Thus, although Prudential contends that the language within other subsections of the statute should not be considered in making our determination, we find that the plain meaning of "civil action" must be derived from the context in which the language lies.
Section 768.73 addresses the limitation of punitive damages. In "any civil action" based on negligence, strict liability, products liability, misconduct in commercial transactions, professional liability, or breach of warranty, punitive damages are limited to three times the amount of compensatory damages. § 768.73(1)(a), Fla. Stat. (1991). Likewise, subsection (2), which is at issue in this case, provides for the splitting of an award of punitive damages between the claimant and the State in "any civil action." As the Mieles note, other parts of the statute include language that is foreign to arbitration proceedings. The subsection that sets forth the procedure for dealing with an excessive award of punitive damages states that a defendant is entitled to "remittitur" unless the claimant demonstrates to the "court" that the award is not excessive. § 768.73(1)(b). The statute further provides that this procedure is not intended to prohibit an appropriate "court" from exercising its jurisdiction to determine the reasonableness of an award that is less than three times the compensatory damages. § 768.73(1)(c). Moreover, the "jury" is not to be instructed or informed about the provisions of the statute. § 768.73(5).
There is no provision for a remittitur or a jury in arbitration proceedings. A court need not be involved in determining the reasonableness of an award unless called upon by the parties to confirm, vacate, or modify or correct an award. See §§ 682.12-.14, Fla. Stat. (1991). When viewed within this context, the term "civil action" in section 768.73 clearly refers to an action filed in a court of this state and does not include an arbitration proceeding.
While both parties cite Black's Law Dictionary in support of their positions, we find that the dictionary definitions support the Mieles' position that "civil action" does not include arbitration proceedings. Prudential correctly notes that Black's definition of "civil action" includes "all types of actions other than criminal proceedings." Black's Law Dictionary 222 (5th ed. 1979) (emphasis added). However, Black's definition of "action" clearly contemplates a proceeding filed in a court.[4]
Prudential further argues that even if arbitration proceedings are not civil actions within the meaning of section 768.73, confirmation proceedings are civil actions which would subject an award of punitive damages to the splitting provisions of the statute. We disagree. Proceedings to confirm an arbitration award are governed by chapter 682, Florida *473 Statutes (1991), the "Florida Arbitration Code." Section 682.12, Florida Statutes (1991), specifically provides that "[u]pon application of a party to the arbitration, the court shall confirm an award, unless ... grounds are urged for vacating or modifying or correcting the award."
In an amicus brief, the Florida Department of Banking and Finance (Department) argues that the state policy of discouraging punitive damage claims will be thwarted if arbitration proceedings are not subjected to the splitting provisions of section 768.73(2). The Department further argues that such an interpretation will encourage claimants to choose arbitration in order to avoid compliance with section 768.73(2). We do not agree.
Section 768.73 was enacted as a part of the 1986 Tort Reform and Insurance Act, which was intended to provide a solution for an insurance crisis that existed in the state. See Smith v. Department of Ins., 507 So.2d 1080, 1083-84 (Fla. 1987). While legitimate legislative objectives underlie section 768.73(2), namely "to allot to the public weal a portion of damages designed to deter future harm to the public and to discourage punitive damage claims by making them less remunerative to the claimant and the claimant's attorney," Gordon v. State, 608 So.2d 800, 802 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1647, 123 L.Ed.2d 268 (1993), we find no clear legislative intent that the statute apply to arbitration proceedings.
Under Florida law, arbitration is a favored means of dispute resolution and courts indulge every reasonable presumption to uphold proceedings resulting in an award. Roe v. Amica Mut. Ins. Co., 533 So.2d 279, 281 (Fla. 1988). This high degree of conclusiveness attaches to an arbitration award because the parties themselves have chosen to go this route in order to avoid the expense and delay of litigation. Applewhite v. Sheen Fin. Resources, Inc., 608 So.2d 80, 83 (Fla. 4th DCA 1992). Arbitration is an alternative to the court system and limited review is necessary to prevent arbitration from becoming merely an added preliminary step to judicial resolution rather than a true alternative. Complete Interiors, Inc. v. Behan, 558 So.2d 48, 50 (Fla. 5th DCA), review denied, 570 So.2d 1303 (Fla. 1990). In light of arbitration's status as an "alternative to the court system," id. at 50, we cannot assume that the same legislative objectives underlying section 768.73 are applicable to arbitration proceedings. If the legislature determines that arbitration proceedings should be subjected to the same punitive damage limitations as court actions, then it can so indicate.
Accordingly, we answer the certified question in the negative and return this case to the United States Court of Appeals for the Eleventh Circuit.
It is so ordered.
SHAW, KOGAN, HARDING and ANSTEAD, JJ., concur.
GRIMES, C.J., dissents with an opinion, in which OVERTON, J., concurs.
OVERTON, J., dissents with an opinion, in which GRIMES, C.J. and McDONALD, Senior Justice, concur.
McDONALD, Senior Justice, dissents with an opinion, in which GRIMES, C.J. and OVERTON, J., concur.
GRIMES, Chief Justice, dissenting.
By the passage of section 768.13, Florida Statutes (1991), the legislature expressed the public policy of allocating a portion of punitive damage awards to either the state or the Public Medical Assistance Trust Fund. I cannot conceive that the legislature intended to create the anomaly of excluding arbitration awards of punitive damages from this allocation. Because the statute is broad enough to include arbitration awards, this Court should seek to effectuate rather than thwart legislative intent.
OVERTON, J., concurs.
OVERTON, Justice, dissenting.
I dissent. I agree with the dissents of both Chief Justice Grimes and Justice McDonald. As I read it, the majority decision will allow the recovery of full punitive damages by the claimant in arbitration proceedings when those damages are awarded prior *474 to the claimant's filing of a formal lawsuit. However, under our statutes and rules of civil procedure, if an arbitration occurs after a claimant files a lawsuit under section 44.103, Florida Statutes (1993) ("Court-ordered, nonbinding arbitration") (implemented by Florida Rule of Civil Procedure 1.820), or section 44.104, Florida Statutes (1993) ("Voluntary binding arbitration") (implemented by Florida Rule of Civil Procedure 1.830), the claimant will be required to pay 60% of a punitive damage award to the general revenue fund of the State of Florida pursuant to the provisions of section 768.73(2), Florida Statutes (1991). I do not believe the legislature intended this illogical result nor do I agree with the narrow definition of "civil action" set forth in the majority opinion.
The term "civil action" has long been held to include all legal remedies to resolve civil disputes between adversary parties so long as those remedies are designed for the recovery or vindication of a civil right or redress of a civil wrong. For instance, in a long form definition of a civil action set forth in an older edition of Black's Law Dictionary, 331-32 (3d ed. 1933), civil actions are defined as actions that "include all actions which cannot legally be denominated `criminal cases'" and that are "designed for the recovery or vindication of a civil right or the redress of some civil wrong" between adversary parties.[5] (Emphasis added.) Without question, mediation and arbitration are alternative methods of "recovering or vindicating a civil right or of redressing some civil wrong." Moreover, they constitute methods of dispute resolution that the legislature has recognized and that the judicial branch has strongly advocated and implemented. See, e.g., §§ 44.103, 44.104, Fla. Stat. (1993); Fla. R.Civ.P. 1.700, et seq., 1.800, et seq. In recognizing that mediation and arbitration are simply alternative methods of addressing civil disputes, this Court has included the rules governing these proceedings within the Florida Rules of Civil Procedure. Additionally, arbitration awards are enforced by the utilization of the judicial system. Given the historical connotation and the modern day *475 usage of the term "civil action," I find that the definition of that term within the meaning of section 768.73(2) properly includes all legal remedies to resolve civil disputes between adversary parties. Such a definition is wholly consistent with not only the historical connotation given to "civil actions" generally but is also consistent with the remedies that we have provided in this State to allow citizens to resolve disputes.
The majority's holding will encourage claimants to pursue punitive damage actions in arbitration proceedings to avoid complying with section 768.73(2). It will also produce the inequitable result of requiring claimants who receive punitive damage awards after commencing formal proceedings to pay a portion of those awards to the State while placing no such requirement on claimants who receive punitive damage awards in arbitration proceedings that are completed prior to the filing of a formal proceeding. To me, to say that the term "civil action" requires the filing of a formal civil lawsuit is clearly contrary to the intent of the legislature and to the use of that term in today's world.
GRIMES, C.J. and McDONALD, Senior Justice, concur.
McDONALD, Senior Justice, dissenting.
An arbitration award cannot be enforced until a judgment is entered by a court in reference to it. A proceeding to enforce such an award is a civil action. The enforceable judgment is the result of a civil action. If that judgment includes punitive damages, then those damages are subject to the provisions of section 768.73, Florida Statutes (1991). As recited in the majority, the statute requires that in "any civil action" 60 percent of a punitive damage award shall be paid to the state.
The statute does not limit the allocation of punitive damage awards to those initially found by a judge or jury. It simply requires that they be entered in a civil action. It matters not that the determination of entitlement and the amount was originally found by arbitrators. The final entitlement to the punitive damages resulted from a law suit between the parties seeking an interpretation and enforcement of the arbitrators' action. Surely such a proceeding is a "civil action."
I also believe that, even without the civil action to enforce an arbitrator's award being present, the legislature intended for the division of punitive damages to be applicable in an arbitration setting. I can find no logical reason for a division of punitive damage awards in a jury- or judge-found award and excluding it in an arbitration award. Surely the legislature contemplated that all punitive damage awards were included.
I note that we have concluded that work performed in arbitration proceedings was to be considered in awarding suit money under the provisions of section 627.428, Florida Statutes (1987). Fewox v. McMerit Construction Co., 556 So.2d 419 (Fla. 2d DCA 1989), approved, 579 So.2d 77 (Fla. 1991). It seems to me that, if we included arbitration proceedings for that purpose, we should also include them in the interpretation of the statute at hand.
I conclude that the normally clear-thinking majority has misfired on this one and has come up with a wrong answer. It is too bad that the legislature will be forced to correct an obvious error.
GRIMES, C.J. and OVERTON, J., concur.
NOTES
[1] Section 768.73, Florida Statutes (1991), was enacted by the Florida Legislature as part of the Tort Reform and Insurance Act of 1986. The statute provides in pertinent part:

(2) In any civil action, an award of punitive damages shall be payable as follows:
(a) Forty percent of the award shall be payable to the claimant.
(b) If the cause of action was based on personal injury or wrongful death, 60 percent of the award shall be payable to the Public Medical Assistance Trust Fund; otherwise, 60 percent of the award shall be payable to the General Revenue Fund.
§ 768.73(2), Fla. Stat. (1991).
[2] The legislature subsequently amended section 768.73(2) to provide that 35% of a punitive damage award is payable to the State of Florida. Ch. 92-85, § 2, at 822, Laws of Fla.
[3] Florida Rule of Civil Procedure 1.050 provides:

Every action of a civil nature shall be deemed commenced when the complaint or petition is filed except that ancillary proceedings shall be deemed commenced when the writ is issued or pleading setting forth the claim of the party initiating the action is filed.
[4] The definition of "action" includes:

Term in its usual legal sense means a suit brought in a court; a formal complaint within the jurisdiction of a court of law. The legal and formal demand of one's right from another person or party made and insisted on in a court of justice. An ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. It includes all the formal proceedings in a court of justice attendant upon the demand of a right made by one person of another in such court, including an adjudication upon the right and its enforcement or denial by the court.
Black's Law Dictionary 26 (5th ed. 1979) (citation omitted) (emphasis added.)
[5] The full definition of the term "civil action" as set forth in Black's is as follows:

Civil Action.
In the Civil Law
A personal action which is instituted to compel payment, or the doing of some other thing which is purely civil.
At Common Law
One which seeks the establishment, recovery, or redress of private and civil rights;  distinguished from a criminal action.
One brought to recover some civil right, or to obtain redress for some wrong not being a crime or misdemeanor.
Civil cases are those which involve disputes or contests between man and man, and which terminate only in the adjustment of the rights of plaintiffs and defendants. They include all cases which cannot legally be denominated "criminal cases."
Civil suits relate to and affect, as to the parties against whom they are brought, only individual rights which are within their individual control, and which they may part with at their pleasure. The design of such suits is the enforcement of merely private obligations and duties. Criminal prosecutions, on the other hand, involve public wrongs, or a breach and violation of public rights and duties, which affect the whole community, considered as such in its social and aggregate capacity. The end they have in view is the prevention of similar offenses, not atonement or expiation for crime committed.
"Civil cause" comprehends every conceivable cause of action whether legal or equitable, except such as are criminal in the usual sense; that is, where the judgment against the defendant may be fine, or imprisonment, or both, and in case of fine alone, imprisonment until payment.
In Code Practice
A proceeding in a court of justice in which one party, known as the "plaintiff," demands against another party, known as the "defendant," the enforcement or protection of a private right, or the prevention or redress of a private wrong. It may also be brought for the recovery of a penalty or forfeiture.
A "civil action" implies adversary parties and an issue, and is designed for the recovery or vindication of a civil right or the redress of some civil wrong.
The distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, is abolished; and there shall be... but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be denominated a "civil action."
"Civil action" is a generic term, and does not necessarily imply jury trial.
Black's Law Dictionary 331-32 (3rd ed. 1933) (citations omitted; emphasis added).