FARMER, J.,
dissenting.
I certainly agree that a contract right to arbitrate can be waived. But if I am no fan of arbitration — at least not as it is *826 sometimes imposed in consumer transactions — I am concerned that the majority’s decision waiving arbitration marks a serious and substantial departure from the statutory policy of enforcing arbitration agreements in the same way contracts are generally enforced. In my opinion, it is most casual in its unprecedented extension of the grounds on which contract rights to arbitrate may be deemed waived. And the grounds said to support the waiver conflict with clear precedent in this district. The majority opinion demands a detailed response, the length of which impels me to beg the reader’s leave.
The principal contentions of Green Acres[4] begin with its legal argument that a default operated to waive arbitration. Then it argues Bland’s various conduct before and after the filing of its second try at suing him also waived his right to arbitrate. I think Green Acres fails in all these contentions.

A. Default as a waiver of arbitration

How did Bland waive arbitration by suffering a default in the second lawsuit filed during the long settlement discussions of the parties? The majority claim Bland’s default admitted the “well-pleaded” allegations and liability stated in the complaint filed by Green Acres.[5] But what does the law actually regard as admitted by this particular default?
The rules require that any contract on which action is brought be attached and made a part of the pleading.[6] A contract then becomes part of the pleading for all purposes.[7] The statute’s term for all purposes undoubtedly includes any issues raised by a default. We must therefore look to the Complaint and its well-pleaded allegations and assay the default’s effect on the contract provision for arbitration.
The March 15, 2005, Sales and Purchase Contract was attached to the Complaint. Its arbitration provision says this:
14. DISPUTE RESOLUTION: This Contract will be construed under Florida law. All controversies, claims or other matters in question arising out of or relating to this transaction or this Contract or for breach will be settled as follows:
(a) Disputes concerning entitlement to deposits made and agreed to be made: ...
(b) All other disputes: Buyer and Seller will have 30 days from the date a dispute arises between them to resolve the matter through mediation, failing which the parties will resolve the dispute through neutral binding arbitration in the County where the property is located.... This clause will survive closing, [e.o.]
The parties agreed that arbitration replaced litigation. We must judge their *827 agreement under Florida law, not the law of another State or federal law. The contract’s mediation provision first requires an attempt to settle a dispute before resorting to arbitration. Nothing in their Contract says they must demand arbitration while they are trying to settle.
Nothing in the Complaint says anything about waiving arbitration. There are no allegations about any waiver, no demand for such relief. Our decision on this identical issue in Opti Inc. v. Sales Engineering Concepts Inc., 701 So.2d 1234 (Fla. 4th DCA 1997), is therefore controlling. In deciding that under a default a similar Contract actually required arbitration and did not admit liability in the lawsuit, we said:
“In this case the complaint alleged a contract between the parties, a copy of which was attached to the pleading, and a breach. The attached contract contained a provision that the sole remedy for breach would be by arbitration in California. The complaint did not allege that the breaching party had waived or refused to arbitrate, but instead sought a judicial remedy by money judgment. Plaintiffs prayer for a money judgment was thus repugnant to the specific allegations of the contractual provisions, and therefore the pleading was a nullity. Harry Pepper & Assoc., Inc. v. Lasseter, 247 So.2d 736 (Fla. 3rd DCA), cert. den., 252 So.2d 797 (Fla.1971); Harry P. Trawick, Jr., Florida Pleading and Practice, § 6-7, at 84-85 (1996 ed.). The complaint failed on its face to state a cause of action for any judicial relief, other than to compel arbitration.”
701 So.2d at 1235. We could copy that text for this case. Here, neither the Contract nor the procedural facts around the default can be distinguished from those in Opti. The Green Acres pleading makes no claim of waiver. So, under clearly applicable precedent from this court, the proper legal response to the default was to require arbitration, not find it waived by the default. Reliance on the default as a waiver of arbitration is therefore a non sequi-tur in conflict with that precedent.

B. Conduct deemed by law as waiving arbitration

Passing on from the default issue, we confront another problem. Assuming proof, what kind of conduct does the law generally recognize as waiving arbitration? In Raymond James Financial Services Inc. v. Saldukas, 896 So.2d 707 (Fla.2005), the court said:
“The right to arbitration, like any contract right, can be waived. The [U.S.] Supreme Court has made clear that the ‘strong federal policy in favor of enforcing arbitration agreements’ is based upon the enforcement of contract, rather than a preference for arbitration as an alternative dispute resolution mechanism. Thus, the question of whether there has been waiver in the arbitration agreement context should be analyzed in much the same way as in any other contractual context. The essential question is whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right.” [e.s., c.o.]
896 So.2d at 711.[8] The supreme court’s holding is that a party may waive a con *828 tract right to arbitration by the kind of participation in litigation that conflicts with the right to arbitrate.[9]

C. What participation in litigation conflicts with arbitration?

Knowledge of the pendency of the suit by itself tells us nothing about any waiver of arbitration. The real question is: under the total circumstances how did a party’s participation in a lawsuit conflict with a right to arbitrate? This court addressed that issue in Miller & Solomon General Contractors Inc. v. Brennan’s Glass Inc., 824 So.2d 288 (Fla. 4th DCA 2002). Our inquiry concerned the nature of conduct properly deemed to conflict with the right to arbitrate. We explained:
“Whether there is a ‘[w]aiver of the right does not necessarily depend on the timing of the motion to compel arbitration, but rather on the prior taking of an inconsistent position by the party moving therefor.’ ‘[WJaiver may occur as the result of active participation in a lawsuit.’ This is true because such action is generally presumed to be inconsistent with the intent to arbitrate. ...
“All questions about waivers [of arbitration] should be construed in favor of arbitration rather than against it.
[[Image here]]
... “Courts have found active participation in cases in which the party seeking arbitration has defended by attacking the merits of the case as opposed to initially challenging the plaintiffs right to judicial remedy in the first place.
[[Image here]]
Based upon these cases, it is clear that the prevailing view looks at the defendant’s intention in responding. Is the defendant’s response to attack the merits? If so, then waiver is acknowledged. If the defendant’s response is not directed at the merits of the actual underlying claim, then waiver should not be inferred.” [e.s., c.o.]
824 So.2d at 290, 291. Our holding in Miller & Solomon is that if the defendant’s conduct in litigation is not directed at the merits of the underlying claim, then waiver should not be inferred. An attempt to dismiss a lawsuit only on procedural grounds thus does not constitute a waiver in our controlling precedent. That is the law in this district, and we have since followed it. See Marine Environ. Partners Inc. v. Johnson, 863 So.2d 423, 427 (Fla. 4th DCA 2003) (party’s filing Answer on merits waived ai'bitration).[10]
To avoid a waiver, the majority would require Bland to demand arbitration in his first appearance in court. Truth is, his motion to set aside the default did assert a defense of arbitration.[11] He also demand *829 ed arbitration in his motion to compel. But Miller & Solomon makes clear that only participation on the merits results in a waiver of arbitration. Thus, the absence of a demand for arbitration in Bland’s first appearance in litigation does not affect his right to arbitration so long as he did not seek a judicial outcome on the merits of the dispute. Nothing shows him even inferentially asserting the merits at any time.
The majority implies that the party must “directly raise the arbitration clause” to avoid a waiver by participation in litigation. Again Miller & Solomon does not require that he directly — or, for that matter, even indirectly — raise the right to arbitrate in his first response to a lawsuit, but only that he refrain from addressing the merits. Again, in truth Bland’s motion to vacate the default did expressly assert that he had a valid contract defense of arbitration, and we know from Opti that the default actually had the result of establishing his right to arbitration.

D. No evidence to suppori waiver

When an issue must be determined on the basis of the “totality of the circumstances” the circumstances in question are historical facts, which can be established only by evidence. As the court said in Jacksonville Sheriff’s Office v, Cowen, 973 So.2d 503, 507 (Fla. 1st DCA 2007), “[generally a determination of whether a party has waived the right to arbitrate a dispute involves findings of fact that would be reviewed in this court for support by competent substantial evidence.”
So what did the evidence in the trial court show about waiver? Absolutely nothing. There was no proof, only jawing. The hearing in this case is striking for its utter absence of any evidence. It consisted entirely of two lawyers arguing before a judge, answering his questions with mere unsworn assertions as to their understanding of facts. Neither lawyer produced any testimony or affidavits directly addressing waiver (or anything else at issue, for that matter). The lawyer for Green Acres never authenticated the two letters on which he relied to establish a waiver or sought them admission into evidence. In fact he could not even produce the critical October letter.[12] Both counsel simply rely on their assertions in place of evidence.
And what is the effect of lawyers attempting to prove necessary facts by their own unsworn assertions? In Leon Shaffer Golnick Advertising Inc. v. Cedar, 423 So.2d 1015 (Fla. 4th DCA 1982), we rejected the use of unsworn assertions by lawyers as evidence and explained:
“the practice we wish to see terminated is that of attorneys making unsworn statements of fact at hearings which trial courts may consider as establishing facts. It is essential that attorneys conduct themselves as officers of the court; but their unsworn statements do not establish facts in the absence of stipulation. Trial judges cannot rely upon these unsworn statements as the basis for making factual determinations; and this court cannot so consider them on review of the record. If the advocate wishes to establish a fact, he must provide sworn testimony through witnesses other than himself or a stipulation to which his opponent agrees.” [e.s.]
*830 Golnick Advertising, 423 So.2d at 1016-17. The Golnick Advertising holding is now well established in this district and elsewhere.[13]'
Judge Gross has made clear in Brown v. School Board of Palm Beach County, 855 So.2d 1267 (Fla. 4th DCA 2003), why this policy must be followed in this court:
“I concur in the majority opinion, because the rule of Leon Shaffer Golnick Advertising Inc. v. Cedar is firmly entrenched; in the absence of a stipulation, unsworn statements by the attorneys cannot be the basis for factual findings by the trial court. Stare deci-sis compels reversal.
“It seems to me that the law should require an objection to preserve the issue for appellate review. At brief hearings on attorney’s fees or sanctions like the one in this case, it is not uncommon for each attorney to present one side of the case without any objection or request for cross-examination from the other. If I were writing on a blank slate, I would hold that such silence waived the objection to the court relying on unsworn testimony. To do otherwise is to allow an attorney to blindside an opponent by springing a ‘gotcha’ argument on appeal. A timely objection would allow the deficiency in proof to be cured without requiring the time and expense of an appeal and a second hearing.
“My reading of the law in this district is that no timely objection is required to preserve the Leon Shaffer objection on appeal. In Leon Shaffer, it does not appear that there was any objection to the attorneys’ unsworn testimony in the trial court; ‘both attorneys made un-sworn representations about the nonappearance of appellant’s attorney’ at a hearing.
“Similarly, in Ladoff v. Ladoff [496 So.2d 989 (Fla. 4th DCA 1986) ], we did not require an objection in the trial court to reverse based on the Leon Shaffer rule. We treated the issue as one of a failure of proof.” [c.o.]
855 So.2d at 1270 (Gross, J., specially concurring).
This case is identical to Golnick Advertising and Brown. No testimony was taken; no documents were authenticated or admitted into evidence; no objections were made about the absence of these formalities.[14]

*831
E. Legal insufficiency of conduct claimed to waive arbitration

In addition to the lack of actual evidence on the waiver issue, the totality of conduct relied upon by the majority is legally insufficient to constitute a waiver of arbitration.[15] Each of the separate contentions is also independently inadequate, so six zeros add up to zero.

1. Bland knew of the 2005 suit no later than March of2006

No proof establishes that Bland knew Green Acres had refiled the lawsuit before he received its motion for judgment on the default. While the lawyer for Green Acres argued that by inference from letters he had written to Bland’s lawyer Bland must have known of the refiling, he produced no evidence to support this contention. The letters he read to the trial judge do not say that the lawsuit has been refiled. The trial judge certainly sided with the position of Green Acres in denying Bland’s motion to compel arbitration — but not because of some evidence. Any description of the trial judge making a “finding” is therefore inaccurate.

2. Bland “actively avoided service” of process

The majority asserts that Bland waived arbitration by “actively avoiding service” of process but declines to explain how such avoidance would amount to a waiver of arbitration. If the test for waiver is participating in the litigation, the legal question posed by this part of the holding becomes simple. Because avoiding service stops litigation from ever getting started, how would avoidance of service of process ever amount to a waiver of arbitration?
The parties had agreed to arbitration in their contract. Green Acres wanted to breach this provision and instead litigate in court. Bland was privileged to insist on arbitration. So why is he required to assist Green Acres in getting a lawsuit underway by facilitating service of process? It passes all reason to conclude that avoiding service waives arbitration.
For that matter, when did the law begin requiring defendants to assist in effecting service of initial process in order to preserve their contract rights?[16] Actively avoiding service of process (without criminal conduct) is not only legally protected, it’s an American custom.[17] The majority’s *832 reliance on Bland’s failure to assist in service of process is not only legally incoherent, it’s downright un-American.

3. Failure to comply with the mediation pre-condition to arbitration

Paragraph 14B of the contract provided that the parties would resort first to mediation before arbitration. The majority argues that Bland failed to comply with the mediation provision. The Contract does use the term mediation. But mediation was used by the parties in its commonly defined sense: “intervention to promote settlement or compromise;” “an attempt to bring about peaceful settlement or compromise between disputants.”[18] Thus the real purpose of the mediation provision was simply to require the parties to make an honest effort to settle the case first.
Because they were themselves negotiating through counsel, neither party demanded a formal mediator. Why isn’t mutual participation in settlement discussions for two years more than enough compliance with a contract provision whose essential purpose is simply to require them to try to settle a dispute before resorting to arbitration? With such a long effort to settle, failing to try mediation could hardly be material when the purpose is to try settlement before arbitration.

Ip. Bland failed to make demand under § 684-22(1) and waited 11 months after learning suit had been refiled and over seven months after appearing to seek to com,pel arbitration

The statute on which the majority rely says:
“A person may apply to a circuit court of this state for an order compelling arbitration if that person claims that another party to a dispute has entered into a written undertaking to arbitrate that dispute and after notice has refused or otherwise failed to arbitrate in accordance with the undertaking.”[19]
The majority is really saying here that Bland should have made his motion to compel arbitration at some point during the long negotiations of the parties to settle their dispute before Green Acres procured the entry of a default in the second lawsuit it commenced during those discussions. The statute, however, states no time limit and imposes no condition of any *833 kind as to when a party must invoke the assistance of the court to require arbitration. Nothing in this statute empowers judges to refuse to compel compliance with written arbitration agreements on the basis of the timing or sequencing of a motion to compel.
Even more important, if there is a valid written agreement to arbitrate, as is indisputably true in this case, this statute makes any waiver issue a decision for the arbitrators, not for judges.[20] So the majority has now created a judicial pre-con-dition contrary to the statute and the contract of these parties — and also one that conflicts with the jurisdiction of the arbi-tral tribunal, at that! The very invocation of this new judge-made rule suggests a return to the former hostility of judges to contracts to arbitrate as attempts to oust courts of their jurisdiction.[21]

5. Engaged in settlement negotiations for years without raising the arbitration clause

Finally, the majority argue that arbitration may be waived simply by taking part in settlement discussions. This may be the most insidious part of the majority’s decision on a waiver of arbitration. Allowing mere attempts to settle to have the effect of waiving arbitration is a very pernicious holding. It is also incoherent with essential law and policy.
So preferred is settlement of commercial disputes that the supreme court has forcefully articulated a strong public policy encouraging it. See Robbie v. City of Miami, 469 So.2d 1384 (Fla.1985) (holding “settlements are highly favored and will be enforced whenever possible”). And when parties attempt to effect a private resolution of disputes, they are responding not only to primal vestiges among social animals but also to immensely vital public policy.
For a waiver, the majority rely on O.J. Distributing Inc. v. Hornell Brewing Company Inc., 340 F.3d 345 (6th Cir.2003), a federal decision applying unspecified law other than Florida’s. The contract here requires application of Florida law.
In truth, this federal case does not even support their holding. There a party was held to have waived arbitration by engaging in 15 months of negotiations after terminating a distributorship relationship. But during this protracted period of bargaining, the party continually denied the existence of the contract to arbitrate, disclaiming any such duty. Because the party persistently denied arbitration during the settlement discussions, the court found that the party had waived arbitration. The appellate court agreed this conduct of renouncing arbitration amounted to a waiver. In sum, it was not because the party negotiated settlement that arbitration was waived. It was instead the party’s repeated disavowals of any agreement to arbitrate that waived arbitration.
There are many reasons not to regard settlement discussions alone as waiving arbitration unless there is an express disavowal. As one writer said: “Pre-litigation negotiations often involve acts or state *834 ments that amount to nothing more than posturing (where one party attempts to ‘stare down’ the other party in the hope of a capitulation).” Thomas H. Oehmke, 3 COMMERCIAL Arbitration § 50:20 (database updated March 2009).
Avoiding litigation is the purpose of settlement negotiations. Avoiding litigation is the sole purpose for contracts to arbitrate. The essential nature of such agreements therefore cuts strongly against finding waivers of arbitration by simply engaging in settlement discussions.
Moreover, what is the theoretical basis to treat any failed settlement attempt as abandoning a contract right? The law has long indulged an unspoken custom or presumption that all settlement discussions are without prejudice to any claim or defense.[22] Today’s decision directly undermines that policy. Private settlement efforts should almost never be used by judges to deny disputed contract rights. Finding waiver in attempts to settle degrades the significance placed on peaceful settlement over both litigation and arbitration.

F. Service of Initial Process

There is one final difficulty with any waiver from taking part in the lawsuit. It has to do with an obvious, irrefutable defect in service of initial process. Counsel’s predicate affidavit for constructive service reveals he knew Bland’s local counsel— with whom he was in contact throughout the settlement discussions — and where to reach him. In spite of that he sent the required notice of service by publication only to Bland’s old address which he knew would never reach him. When asked by the trial Judge if he had also sent a copy of the notice to Bland’s lawyer, he responded: “I felt that sending him a letter ... was above and beyond the call.” [sic! ]
To the contrary, his failure to do so violated the essential notice required by due process. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and Tulsa Prof. Collection Serv. Inc. v. Pope, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) (holding that if person’s identity is known, under Mullane due process requires notice by such means as is certain to ensure actual notice).[23] We are left with notice to Bland only in the form of a wink and a nod, a blank sign.[24] This failure in service of initial process renders the default and any consequent judgment void.
In assessing whether Bland’s conduct was a voluntary and intentional waiver, and resolving doubts about the effect of a default in favor of arbitration, I am therefore led to accord no legal significance to this impotent incident of attempted process. If he were not properly served initially, it cannot possibly be said Bland’s attempts to quash service and compel arbitration constitute the kind of participation *835 as would waive his contract right to arbitrate.
I would reverse and require arbitration.

. A verbal nugget lies buried in the verbal harvest of this case: a lawyer named Kom-field argues on behalf of a party named Green Acres before a judge named Farmer. Maybe it’s just fertilizer for the Farmer.

. See Board of Regents v. Stinson-Head Inc., 504 So.2d 1374, 1375 (Fla. 4th DCA 1987) ("A default admits liability as claimed in the pleading by the party seeking affirmative relief against the party in default. It operates as an admission of the truth of the well pleaded allegations of the pleading, except those concerning damages. It does not admit facts not pleaded, not properly pleaded or conclusions of law.”) [e.s.] (quoting Henry Trawick, Florida Practice and Procedure § 25-4 (1986)).

. Fla. R. Civ. P. 1.130(a) (“All ... contracts ... upon which action may be brought or defense made, or a copy thereof ... shall be incorporated in or attached to the pleading”).

. Fla. R. Civ. P. 1.130(b) ("Any exhibit attached to a pleading shall be considered a part thereof for all purposes”).

. Citing Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218-24, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); see also Roe v. Amica Mut. Ins. Co., 533 So.2d 279 (Fla. 1988) (arbitration is favored means of dispute resolution and courts indulge every reasonable presumption to uphold arbitration awards); Miele v. Prudential-Bache Securities, 656 So.2d 470 (Fla. 1995) (same); Tumberry Assoc, v. Service Station Aid Inc., 651 So.2d 1173 (Fla. 1995) (contracts to arbitrate favored but parties may *828 waive right to have judge determine attorneys fees).

.One indication of the majority’s casualness about waiving arbitration is its gratuitous observation that Green Acres itself did so simply by commencing litigation over the dispute. Actually, for any other kind of contractual undertaking, this would be seen as a breach of a material provision to arbitrate disputes, not as a waiver. When one contracting party unilaterally breaches a contract, the question may then become whether the other party has made that breach bilateral by conduct acquiescing in it. But the majority's readiness to see the Green Acres breach of the agreement to arbitrate as simply just another waiver is merely the first sign that this right of avoiding courts is really a lesser kind of undertaking — something either side can easily walk away from.

. See also Christopher B. Hopkins, The Perils Of Enforcing "Favored" Arbitration, 24 Trial Advocate Q. 30, 34 (2005) (“The Fourth District Court of Appeal held that 'attacking the merits' was the test for waiver ...").

. His motion said: “[Bland] has meritorious defenses to the Petition which include: Invalidity of Service and Contractual Defenses to *829 the bringing of this action in the Circuit Court." [e.s.] The Green Acres claim that Bland did not move to compel arbitration until almost 11 months after he knew about the suit is an unsworn assertion by its lawyer lacking any evidence to support it.

. Nor have the letters been furnished in any Appendix filed in this court.

. See Faircloth v. Bliss, 917 So.2d 1005, 1006-07 (Fla. 4th DCA 2006) (“Unsworn statements by attorneys are usually not considered as evidence by trial courts unless stipulated to by both parties”); Hitt v. Homes & Land Brokers Inc., 993 So.2d 1162, 1166 (Fla. 2d DCA 2008) (unsworn statements of counsel do not establish facts); Ramunno v. Terranova, 963 So.2d 945 (Fla. 4th DCA 2007) (arguments of counsel and unsworn pleadings from another case do not constitute evidence to support factual finding); Romeo v. Romeo, 907 So.2d 1279, 1284 (Fla. 2d DCA 2005) (unauthenticated documents and arguments of counsel were not evidentiary support for factual findings); Reddick v. Reddick, 728 So.2d 374 (Fla. 5th DCA 1999) ("In the absence of a stipulation, and subject to the contemporaneous objection rule, an unsworn statement of fact cannot form the basis for making a factual determination”); Procter & Gamble Co. v. Swilley, 462 So.2d 1188, 1193 (Fla. 1st DCA 1985) (principle is well established in Florida that the unsworn analysis of a party’s attorney is insufficient to satisfy as proof of fact).

. The statement that the "court heard evidence that Bland knew of the 2005 suit no later than March of 2006” is not supported by the transcript. In fact both parties had a burden at the hearing to prove a critical fact for their positions: Green Acres to prove conduct waiving the right to arbitration; Bland to prove a claim of excusable neglect to vacate the default.

. The majority opinion describes the conduct thus: [1] "Bland knew of the 2005 suit no later than March of 2006; [2] actively avoided service; [3] never sought to trigger the mediation pre-condition to arbitration; [4] never made a demand to arbitrate under Fla. Stat. § 684.22(1); [5] waited 11 months after learning suit had been refiled and over seven months after appearing to seek to compel arbitration; and [6] engaged in settlement negotiations for years without raising the arbitration clause.”

. See Kent Sinclair, Service Of Process: Rethinking the Theory and Procedure of Serving Process under Federal Rule 4(c), 73 Va. L. Rev. 1183, 1187 (1987) ("For at least four thousand years, claimants have been required to take concrete steps to bring a putative defendant before the governing tribunal. In the Code of Eshnunna, one of the earliest known legal codes ... plaintiff could not have the action heard ... unless the defendant joined in submitting it to the power of the court.”).

.See Cound Friedenthal Miller and Sexton, Civil Procedure Cases and Materials 172-74 (4th ed. 1980):
"Mrs. Schnible stayed in her room on the third floor and refused to open the door, no matter who knocked. Came a day when she heard a heavy footfall on the first landing, heard somebody running frantically up the first flight of stairs, heard a man’s voice shouting something. ... [R]ight outside her door she heard yelled the word 'Fire!' Mrs. Schnible opened her door. ... ‘Hello, Mrs. Schnible,’ said a man standing there. ‘Here's a summons for you.'... Harry Grossman, who was the man in the hall, is *832 regarded by those who employ him as the champion process-server of the day. ...
“Grossman ... simply places the papers in the hands of the defendant and leaves them there. On innumerable occasions he has had to use ingenuity in order to get close enough to the defendant to do this, and only once has he been forced to depart from a literal interpretation of the legal phrase [referring to the term 'place and leave with’]. That was in the case of an elderly lady, who, like Mrs. Schnible, was trying to hide from him. This lady ... refused to leave her apartment .... [Grossman] began to practice throwing the summons. He put rubber bands around the paper to make it compact, placed a salad bowl on the dining-room table, and practiced ... throwing the subpoena into the bowl from the middle of the living-room. ... [When the lady] sat down at [her] table with a bowl of potatoes in front of her and began placidly to peel them[,] Grossman leaned out of [a nearby] window and tossed the subpoena. The papers landed in the bowl just as the old lady reached into it.’’).
As this article colorfully illustrates, defendant has no duty to assist service of process. To the contrary, plaintiff has the burden of finding some way to effect service without his cooperation.

. Merriam-Webster’s Unabridged Dict. (CD ed.); American Heritage Dict. (3d ed.) 1120. See also § 44.1011, Fla, Stat. (2008) (providing that mediation is an informal, non-adversarial process for disputing parties to reach a voluntary settlement).

. § 684.22(1), Fla. Stat. (2008).

. § 684.22(1), Fla. Stat. (2008) (‘‘All other questions, including ... whether the written undertaking to arbitrate is subject to defenses ... shall be for the arbitral tribunal to decide").

. See, e.g., Damora v. Stresscon Int’l Inc., 324 So.2d 80 (Fla. 1975) (such an agreement is invalid as constituting an attempt to oust the legally constituted courts of their jurisdiction); Pacific Mills v. Hillman Garment Inc., 87 So.2d 599 (Fla. 1956) (contract to arbitrate not enforceable by injunction). Generally, this view was based on the notion that such agreements constituted an attempt to oust courts of their lawful jurisdiction.

. See § 90.408 Fla. Stat. (2008) ("Evidence of an offer to compromise a claim which was disputed as to validity or amount, as well as any relevant conduct or statements made in negotiations concerning a compromise [e.s.], is inadmissible to prove liability or absence of liability for the claim or its value.”); and Sullivan v. Galske, 917 So.2d 412 (Fla. 2d DCA 2006) (provision excluding evidence of efforts to settle is to encourage settlement discussions).

. The nonfinal appeal rule allows review of orders determining jurisdiction over the person. Fla. R.App. P. 9.130(a)(3)(C)(i). A default is void without proper service. I think the failure to cancel the default should be reviewable now, but Bland has not yet invoked our jurisdiction to do so.

. In an old Irish saying: "A wink is as good as a nod to a blind horse.” But not — I daresay — when the horse is losing his green, green acres of pasture.