# Third District Court of Appeal

## State of Florida

Opinion filed December 20, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-524
Lower Tribunal No. F18-10505
_____

**The State of Florida,**
Appellant,

vs.

**Daniel Arshadnia,**
Appellee.

An appeal from the Circuit Court for Miami-Dade County, Laura Shearon Cruz, Judge.

Ashley Moody, Attorney General, and Kseniya Smychkouskaya, Assistant Attorney General, for appellant.

Michael Minardi, P.A., Michael C. Minardi (Tampa), and Darius Asly, for appellee.

Before EMAS, MILLER, and LOBREE, JJ.

MILLER, J.

1

Appellant, the State of Florida, challenges an order dismissing a trafficking in synthetic cannabinoids charge filed against appellee, Daniel Arshadnia. We have jurisdiction. See Fla. R. App. P. 9.140(c)(1)(A). The overarching issue implicated on appeal is whether tetrahydrocannabinol ("THC") derived from the flowers or stems of a cannabis plant qualifies as a "synthetic cannabinoid" under the Florida Comprehensive Drug Abuse Prevention and Control Act. Concluding it does not, we affirm.

**BACKGROUND**

The facts giving rise to this dispute require little elaboration. Law enforcement officers executed a search warrant of Arshadnia's residence and discovered, among other items, marijuana plants and cereal bars. Laboratory testing confirmed the presence of THC in the cereal bars. The chemist could not, however, offer an opinion as to the source of the THC.

The State filed an amended information charging Arshadnia with: (1) trafficking between 25 and 2,000 pounds of cannabis, in violation of section 893.135(1)(a)1., Florida Statutes (2018); (2) possession of a place for the purpose of trafficking in cannabis, in violation of section 893.1351(1), Florida Statutes (2018); and (3) trafficking more than 1,000 grams of a synthetic cannabinoid, in violation of sections 893.135(1)(m)2.c. and 893.03(1)(c)190., Florida Statutes (2018).

2

Arshadnia moved to dismiss the last count. In his motion, he asserted the State was unable to establish that the THC in the cereal bars was of synthetic origin; as a result, he argued, the charge was improper.

The prosecutor opposed the motion. He conceded the THC "could have come from any part of the cannabis plant, including the resin, the flower, [or] the stems." But he contended "synthetic cannabinoids" is something of a misnomer because the term is capaciously defined under Florida law to encompass all THC, regardless of origin. Relying upon the holding by our sister court in State v. Stevenson, 307 So. 3d 784 (Fla. 4th DCA 2020), the trial court granted the motion. The State unsuccessfully sought rehearing, and the instant appeal ensued.

## STANDARD OF REVIEW

We conduct a de novo review of issues of statutory construction. See State v. Espinoza, 264 So. 3d 1055, 1062 (Fla. 3d DCA 2019).

## ANALYSIS

Resolution of this appeal requires an excursion through a maze of dense statutory language that appears, at first blush, nearly impenetrable. Codified in chapter 893, Florida Statutes, the Florida Comprehensive Drug Abuse Prevention and Control Act ("Act") is modeled after the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970. See

3

Cilento v. State, 377 So. 2d 663, 665 (Fla. 1979).  The Act establishes a framework to regulate certain controlled substances deemed to pose a risk of abuse or dependence.  It lists each substance in one of five schedules and imposes penalties based upon a three-tiered classification system: (1) possession of a controlled substance pursuant to section 893.13(6), Florida Statutes; (2) possession with intent to distribute a controlled substance pursuant to section 893.13(1)(a), Florida Statutes; or (3) trafficking pursuant to section 893.135, Florida Statutes.

In the first count of the amended information, the State charged Arshadnia with trafficking in cannabis.  Cannabis is listed in Schedule One of the Act and straightforwardly defined as "all parts of any plant of the genus *Cannabis*, whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin."[1] § 893.02(3), Fla. Stat. (italics in original).

In the third count, the State charged Arshadnia with trafficking in synthetic cannabinoids pursuant to sections 893.135(1)(m)2.c.  and

---

[1] The Act reflects that all Schedule One substances have "a high potential for abuse and . . . no currently accepted medical use in treatment in the United States and in its use under medical supervision does not meet accepted safety standards."  § 893.03(1), Fla. Stat.

893.03(1)(c)190., Florida Statutes. The first statute provides, in pertinent part:

> (m)1. A person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 280 grams or more of a:
>
> a. Substance described in § 893.03(1)(c)30., 46.-50., 114.-142., 151.-156., 166.-173., or 176.-186. *or a synthetic cannabinoid, as described in § 893.03(1)(c)190.*; or
>
> b. Mixture containing any substance described in sub-subparagraph a.,
>
> commits a felony of the first degree, which felony shall be known as "trafficking in synthetic cannabinoids," punishable as provided in § 775.082, § 775.083, or § 775.084.
>
> 2. If the quantity involved under subparagraph 1.:
>
> . . . .
>
> c. Is 1,000 grams or more, but less than 30 kilograms, such person shall be sentenced to a mandatory minimum term of imprisonment of 15 years, and the defendant shall be ordered to pay a fine of $200,000.

§ 893.135(1)(m), Fla. Stat. (emphasis added). The second statute does not precisely define the term "synthetic cannabinoid." Instead, it contains the following description:

> Synthetic Cannabinoids.—Unless specifically excepted or unless listed in another schedule or contained within a pharmaceutical product approved by the United States Food and Drug Administration, *any material, compound, mixture, or preparation that contains any quantity of a synthetic cannabinoid* found to be in any of the following chemical class descriptions, or

5

homologues, nitrogen-heterocyclic analogs, isomers (including optical, positional, or geometric), esters, ethers, salts, and salts of homologues, nitrogen-heterocyclic analogs, isomers, esters, or ethers, whenever the existence of such homologues, nitrogen-heterocyclic analogs, isomers, esters, ethers, salts, and salts of isomers, esters, or ethers is possible within the specific chemical class or designation. Since nomenclature of these *synthetically produced cannabinoids* is not internationally standardized and may continually evolve, these structures or the compounds of these structures shall be included under this subparagraph, regardless of their specific numerical designation of atomic positions covered, if it can be determined through a recognized method of scientific testing or analysis that the substance *contains properties that fit within one or more of the following categories*:

a. Tetrahydrocannabinols.—Any tetrahydrocannabinols naturally contained in a plant of the genus Cannabis, the synthetic equivalents of the substances contained in the plant or in the resinous extracts of the genus Cannabis, or synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity, including, but not limited to, Delta 9 tetrahydrocannabinols and their optical isomers, Delta 8 tetrahydrocannabinols and their optical isomers, Delta 6a,10a tetrahydrocannabinols and their optical isomers, or any compound containing a tetrahydrobenzo[c]chromene structure with substitution at either or both the 3-position or 9-position, with or without substitution at the 1-position with hydroxyl or alkoxy groups, including, but not limited to:

(I) Tetrahydrocannabinol.

§ 893.03(1)(c)190., Fla. Stat. (emphasis added).

In cases involving statutory construction, the cardinal rule is that "the authoritative statement is the . . . text, not the legislative history or any other

extrinsic material."[2]  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568 (2005).  No word should be construed as superfluous.  See State v. Bodden, 877 So. 2d 680, 686 (Fla. 2004).  On the contrary, each word, phrase, sentence, and part of the statute should be given effect.  See Fla. Dep't of Revenue v. Fla. Mun. Power Agency, 789 So. 2d 320, 324 (Fla. 2001).  That is because courts should "presume that [the] legislature says in a statute what it means and means in a statute what it says there."  Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253–54 (1992).

Armed with these entrenched principles, we turn to the case at hand. Section 893.135(1)(m), Florida Statutes, proscribes possession of 280 grams or more of synethetic cannabinoids.  The reader is directed to section 893.03(1)(c)190., Florida Statutes, for an explanation.

As previously noted, section 893.03(1)(c)190., Florida Statutes, in turn, is entitled "Synthetic Cannabinoids" and contains a description, rather than a definition, of the term.  Hence, the statute does not suggest that the term should be construed as a term of art carrying a special connotation.

---

[2] Arshadnia invokes the Legislative Staff Analysis for the proposition that the statute was intended to prohibit "[a]pproximately 56 controlled substances identified as synthetic cannabinoids."  Fla. Staff Analysis, H.B. 447 (2017). Because the statute is clear and unambiguous, we need not resort to external sources.

In the absence of a statutory definition, the "ordinary, contemporary, common meaning" of the term controls. See Perrin v. United States, 444 U.S. 37, 42 (1979). The parties agree that cannabinoids are the active psychoactive components in cannabis. The American Heritage Dictionary defines "synthetic" as "[n]ot natural or genuine; artificial or contrived . . . [p]repared or made artificially." Synthetic, The American Heritage Dictionary of the English Language, 1756 (Houghton Mifflin Co., 4th ed. 2006). In light of these definitions, the statute is plainly directed at artificial substances designed to mimic naturally occurring cannabinoids.

We are mindful that "[t]itles . . . are . . . not dispositive," Yates v. United States, 574 U.S. 528, 552 (2015) (Justice Alito, concurring), and, of course, "[a] title or heading should never be allowed to override the plain words of a text." Fulton v. City of Philadelphia, Pennsylvania, 141 S.Ct. 1868, 1879 (2021) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 222 (West Group 2012)). But here, the root word "synthetic" appears in both the caption and body of section 893.03(1)(c)190., Florida Statutes. Perhaps even more importantly, the plain language of the statute presupposes the forbidden substance was "synthetically produced." § 893.03(1)(c)190., Fla. Stat.

8

Further supporting this construction is the statutory requirement that scientific testing must establish "the substance contains properties that fit within one or more . . . categories." Id. In this vein, the statute lists "homologues" and other analogous substances bearing structural similarities to "[a]ny [THCs] naturally contained in a plant of the genus Cannabis." § 893.03(1)(c)190.a., Fla. Stat. Although this list is by no means exhaustive, it plainly limits the sweep of the statute to "manmade chemicals that mimic the effect of THC," United States v. Nahmani, 696 Fed. Appx. 457, 463 n. 5 (11th Cir. 2017), while simultaneously allowing the government "to keep pace with, or stay ahead of, the quickly changing synthetic drug supply." Joseph A. Cohen, The Highs of Tomorrow: Why New Laws and Policies are Needed to Meet the Unique Challenges of Synthetic Drugs, 27 JLHealth 164, 181–182 (2014); see also Jake Schaller, Not for Bathing: Bath Salts and the New Menace of Synthetic Drugs, 16 J. Health Care L. & Pol'y 245, 248, 267–68 (2013) ("Synthetic marijuana, which initially appeared in the United States in late 2008, typically consists of plant material laced with synthetic cannabinoids: chemicals that claim to provide the same effect as the active ingredient in marijuana, Δ9–tetrahydrocannabinol (THC).").

Our reading is reinforced by other statutory provisions. The Act separately classifies both cannabis and synthetic cannabinoids as Schedule

9

One controlled substances, while concomitantly imposing far harsher penalties for trafficking in the latter. Because the primary psychoactive ingredient in all regulated cannabis is THC, relegating naturally derived THC to the synthetic cannabinoid statute converts the cannabis statute to mere surplusage. Such a construction runs afoul of established principles. See Hechtman v. Nations Title Ins. of N.Y., 840 So. 2d 993, 996 (Fla. 2003) ("It is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage."); see also Fleischman v. Dep't of Pro. Regul., 441 So. 2d 1121, 1123 (Fla. 3d DCA 1983) ("Every statute must be read as a whole with meaning ascribed to every portion and due regard given to the semantic and contextual interrelationship between its parts."); Miele v. Prudential-Bache Sec., Inc., 656 So. 2d 470, 472 (Fla. 1995) ("[T]he context in which a term is used may be referred to in ascertaining the meaning of that term."); Ceco Corp. v. Goldberg, 219 So. 2d 475, 476–77 (Fla. 3d DCA 1969) ("Our task as a reviewing court is to afford a logical construction according to the general terms and intentions of the entire . . . [a]ct," and that "it is axiomatic that we construe the statute as a whole entity . . . in order to arrive at a construction which avoids illogical results").

This interpretation is consistent with the conclusion recently reached by the Fourth District Court of Appeal in State v. Stevenson, 307 So. 3d 784 (Fla. 4th DCA 2020). There, the State appealed an order dismissing a charge of felony possession of THC against Stevenson. Id. at 784. Stevenson successfully argued below that, because the chemist was unable to isolate the origin of the THC, the State was constrained to bring a misdemeanor possession of cannabis charge. Id. at 785.

On appeal, the State argued the origin was irrelevant. Id. at 787. The appellate court disagreed. Id. at 790. Given the weight involved, the court reasoned that the felony charges were only viable "if the State could make a prima facie showing that the source of the THC substance possessed by the defendant was either artificially produced, cannabis resin, or 'any compound manufacture, salt, derivative, mixture, or preparation of such resin.'" Id. Because the State failed to do so, the court upheld the order on appeal. Id.

As in Stevenson, the prosecutor in the instant case was unable to establish the THC was synthetic in origin. Consequently, the trial court correctly dismissed the trafficking in synthetic cannabinoids count because "the undisputed material facts do not legally constitute the crime." State v. Upton, 392 So. 2d 1013, 1015 (Fla. 5th DCA 1981). We therefore affirm the order under review.

11

Affirmed.